2015 VT 83

# Gwendolyn Hallsmith v. City of Montpelier, William Fraser and Jessie Baker

[125 A.3d 882]

No. 14-346

Present: **Reiber, C.J., Dooley, Robinson and Eaton, JJ., and Morris, Supr. J. (Ret.), Specially Assigned**

Opinion Filed June 19, 2015

---

*Norman R. Blais*, Burlington, for Petitioner-Appellee.

*Bernard D. Lambek* of *Zalinger Cameron & Lambek, P.C.*, Montpelier, for Respondents-Appellants.

¶ 1. **Robinson, J.** This appeal calls upon us to determine whether a post-termination judicial remedy, in the form of a breach-of-contract action or a Vermont Rule of Civil Procedure 75 petition, is sufficient to satisfy the due-process rights of an employee whose employment is protected by a "for cause" requirement and who is terminated by a municipal employer following pre-termination proceedings that do not by themselves satisfy due process. Appellee Gwendolyn Hallsmith petitioned for Rule 75 relief, arguing that the City of Montpelier failed to provide her sufficient due-process protections in terminating her employment. The trial court agreed and ordered the City to provide a new post-termination grievance hearing that fully satisfies her due-process rights. We affirm.

¶ 2. The following facts are uncontested.[1] Hallsmith was the planning and community development director for the City of Montpelier. Her employment was protected by a "justifiable cause" provision in the City's personnel plan. In November 2013, City Manager William Fraser placed Hallsmith on paid administrative leave, and sent a letter to her indicating that he was contemplating firing her under the City's personnel plan.[2] In the letter, the city manager described various acts of unprofessional behavior and insubordination, damage to relationships with key individuals and governing bodies within city government, and inappropriate use of City resources. He asserted that these acts were grounds for disciplinary action under the City's personnel

---

[1] The trial court granted Hallsmith's Rule 75 motion on the basis of written pleadings by the parties and the record of the proceedings before the City.

[2] The City Charter authorizes the City to adopt a personnel plan. 24 V.S.A. App. Ch. 5, § 907.

plan, and offered to meet with Hallsmith to consider any response she wanted to make. Hallsmith, accompanied by counsel, met with the city manager and argued her case. Following that meeting, the city manager dismissed Hallsmith from employment with the City.

¶ 3. Hallsmith timely filed a grievance pursuant to the personnel plan, which provides for review of disciplinary action. The parties agreed, and continue to agree now, that Hallsmith was a public employee with a contractual right to continue in employment absent just cause to dismiss, and that the City bears the burden of showing just cause to dismiss her. The review procedure outlined in the personnel plan provides that the grievance hearing shall be before the city manager or the city manager's designee; that "[t]he method and manner of conducting [the] hearing . . . shall be at the discretion of the City Manager"; that the employee "has the right to be represented by counsel and to present any material, witnesses or evidence helpful to the employee's case"; and that "the administration has similar rights." The city manager designated Jessie Baker, the assistant city manager, to serve as hearing officer.

¶ 4. Hallsmith objected to the assistant city manager's appointment as hearing officer, pointing out that the assistant city manager reported directly to the city manager and had been personally involved in the events leading up to Hallsmith's termination. Under these circumstances, Hallsmith believed that the assistant city manager could not be an impartial adjudicator. Hallsmith also objected to many of the procedural rules for the hearing, arguing that they violated her due-process rights. Among other things, she objected to the rules of evidence that were applied in the proceeding and the denial of her right to cross-examine witnesses.

¶ 5. At the hearing, the city attorney was present for the stated purpose of advising the assistant city manager in her adjudicative capacity rather than to represent the city manager or the City's interest. Nevertheless, the city attorney questioned Hallsmith and her witnesses extensively. Hallsmith was not permitted to cross-examine the city manager, the City's only witness. The assistant city manager upheld the City's termination decision.

¶ 6. Hallsmith subsequently filed a Rule 75 petition in the trial court,[3] seeking reinstatement to her position, reimbursement for lost compensation, and other remedies.[4] In her petition, Hallsmith contested the merits of her termination, arguing that the City's decision to terminate her employment was not supported by sufficient evidence of justifiable cause, and that the hearing officer's decision to uphold the termination was not supported by the evidence and applied the wrong legal standard. She also raised a due-process challenge to the post-termination hearing procedures. In particular, she argued that the assistant city manager was not an impartial decisionmaker and that the procedures in the grievance hearing did not satisfy her due-process rights. She specifically objected to reliance on hearsay evidence which she asserted was "excessive" and "unreliable"; to the ban on cross-examination by Hallsmith, contrasted with "vigorous and extensive cross-examination" by the city attorney; and to the city attorney's "dual and conflicting roles as advisory to the hearing officer and presenter of the City's case against Hallsmith."[5]

¶ 7. In response, the City filed a motion to dismiss the due-process claim, arguing that Hallsmith got all the process that was due. The City did not argue that the post-termination grievance hearing was constitutionally adequate. Instead, its sole argument was that the pre-termination *Loudermill* meeting, combined with the availability of a post-termination judicial remedy — a Rule 75 petition challenging governmental action or a common-law action for breach of contract — satisfied due process. The City argued that Hallsmith was not entitled to a post-termination administrative hearing at all, and so any flaws in the grievance

---

[3] Hallsmith filed an initial petition that focused on the merits of the City's termination decision but did not expressly raise the due-process claim. She subsequently filed a motion to amend her petition to include a due-process claim and a claim that the city manager lacked the legal authority to terminate her. Over the City's objections, the trial court granted these motions to amend.

[4] In her petition, Hallsmith named the City, the city manager, and the assistant city manager as defendants. We refer to the defendants collectively as "the City."

[5] Hallsmith also argued that under 24 V.S.A. § 4448(a), only the city council had the authority to terminate her employment. The trial court rejected this argument, pointing to more specific language in the city charter that specifically assigned to the city manager the authority to hire and fire the zoning administrator. The authority of the city manager to terminate Hallsmith's employment is not at issue in this appeal.

hearing were irrelevant.[6] On the merits, the City argued that there was credible evidence establishing justifiable cause for the assistant city manager's decision to sustain the City's firing of Hallsmith.

¶ 8. The trial court rejected the City's argument that the availability of a post-termination judicial remedy in the form of a Rule 75 petition or a breach-of-contract action satisfied due process. The court relied heavily on *Baird v. Board of Education*, 389 F.3d 685, 692-93 (7th Cir. 2004), in which the United States Court of Appeals for the Seventh Circuit concluded that a state breach-of-contract action did not provide adequate due process to protect the rights of a school superintendent whose pre-termination hearing fell short of due-process requirements. The trial court distinguished a Second Circuit decision holding that judicial review similar to the Rule 75 review in this case was sufficient in lieu of a post-termination administrative hearing. See *Locurto v. Safir*, 264 F.3d 154, 173-75 (2d Cir. 2001). The trial court granted the Rule 75 petition and ordered the City "to provide Hallsmith a new grievance hearing that fully satisfies Hallsmith's due process rights, including her rights to confront adverse witnesses and to an impartial adjudicator."[7] The City appeals.

¶ 9. The essential facts concerning the proceedings below, as opposed to the merits of the City's termination of Hallsmith, are not in dispute. "We review questions of law, including whether the requirements of due process have been satisfied, de novo." *In re New Cingular Wireless PCS, LLC*, 2012 VT 46, ¶ 11, 192 Vt. 20, 54 A.3d 141.

¶ 10. ▮ The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due

---

[6] The City maintained this position even before the grievance hearing took place, writing to Hallsmith on two occasions that the City "[did] not consider the grievance procedure to be a required remedy that must be 'exhausted' prior to any court action. In short, you would not waive any legal rights or remedies you may otherwise have if you were to choose not to pursue the grievance procedure."

[7] With respect to Hallsmith's claim for lost wages and reinstatement, the trial court noted that Hallsmith did not bring a breach-of-contract action or seek relief under 42 U.S.C. § 1983, and that proving the due-process violation does not demonstrate that the City lacked justifiable cause for the termination. For that reason, the court concluded that the appropriate remedy was a new post-termination grievance hearing that fully complies with due process.

process of law." U.S. Const. amend. XIV, § 1. To show a violation of procedural due process, an individual must (1) identify a protected property right, (2) show that the state or a state actor has deprived the individual of that right; and (3) show that the deprivation was effected without due process. *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994).

¶ 11. ■ Here, the first two elements are uncontested. Hallsmith had a property right in continued employment by the City because the city's personnel plan (adopted under the city charter, which is incorporated into state law, 24 V.S.A. App. Ch. 5, § 907) granted her tenure in office unless "justifiable cause" existed to dismiss her. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) ("Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972))). Hallsmith's firing by the City therefore constitutes a deprivation of a property right.

¶ 12. ■ ■ This appeal deals exclusively with the third prong: whether the deprivation was effected without due process of law. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted). The "essential principle" of the Due Process Clause is that the government, before effecting a deprivation of a "constitutionally protected property interest," is required to furnish "notice and opportunity for [a] hearing appropriate to the nature of the case." *Loudermill*, 470 U.S. at 542 (quotations omitted). " '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Mathews*, 424 U.S. at 334 (quoting *Morrissey*, 408 U.S. at 481).

¶ 13. ■ In the context of termination of a tenured public employee's employment, the U.S. Supreme Court has held that, given the government's interest in quickly removing an unsatisfactory employee, due process may be satisfied by a combination of a pre-termination opportunity to respond, coupled with more extensive post-termination procedures. *Loudermill*, 470 U.S. at

546-47. The Court explained that because "[d]ismissals for cause will often involve factual disputes," having "some opportunity for the employee to present [his or her] side of the case is . . . of obvious value in reaching an accurate decision." *Id.* at 543. Affording such an opportunity mitigates the risk of error. *Id.* at 545-46. The governmental interest in immediate termination does not. outweigh these interests. *Id.* at 546. These pre-termination procedures need not be elaborate. An acceptable pre-termination procedure will consist of "oral or written notice of the charges," an "explanation of the employer's evidence," and an opportunity for the employee to present the employee's own side of the story. *Id.*

¶ 14. ▮ The *Loudermill* Court explained that " 'something less' than a full evidentiary hearing" was acceptable at the pre-termination stage because a state statute applicable in that case provided a right to "a full administrative hearing and judicial review" post-termination. *Id.* at 545 (quoting *Mathews*, 424 U.S. at 343). The Court held that when such post-termination remedies are available to "definitively resolve the propriety of the discharge," the pre-termination process may be merely an "an initial check against mistaken decisions." *Id.* at 545-46. *Loudermill* did not directly speak to the requirements of a "full post-termination hearing," noting only that due process "requires provision of a hearing 'at a meaningful time.' " *Id.* at 546-47 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

¶ 15. ▮ Hallsmith does not challenge the adequacy of the pre-termination hearing in this case, which took place when Hallsmith and the city manager met before Hallsmith was fired. The fact that the pre-termination process was minimal, however, is relevant because the degree of post-termination process required is linked to the degree of pre-termination process offered. See *id.* at 545 (stating that the minimally acceptable degree of "formality and procedural requisites" at pre-termination hearing "depend[s] upon . . . *the nature of the subsequent proceedings*" (emphasis added) (quotation omitted)). "The general rule is that the less the predeprivation process, the greater must be the post-deprivation process." *Cassim v. Bowen*, 824 F.2d 791, 798 (9th Cir. 1987). If only a summary pre-termination hearing is conducted, " 'due process requires that a discharged employee's post-termination hearing be substantially more "meaningful." ' " *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004) (quoting *Carter v. W.*

*Reserve Psychiatric Habilitation Ctr.,* 767 F.2d 270, 273 (6th Cir. 1985)).

¶ 16. On the other hand, if the pre-termination hearing features the full range of protections required by due process, then the pre-termination hearing may be all the process that is due, with no post-termination hearing required. *Baird,* 389 F.3d at 692 (holding that "when the only available post-termination remedy is the opportunity to bring a state breach of contract suit, the pre-termination hearing . . . must fully satisfy the due process requirements of confrontation and cross-examination in addition to the minimal *Loudermill* requirements of notice and an opportunity to be heard.").

¶ 17. In this case, because the pre-termination hearing was of the more minimal *Loudermill* variety, Hallsmith was undoubtedly entitled to a more complete post-termination process. The question is whether the availability of a breach-of-contract action or a Rule 75 petition in the trial court is sufficient to satisfy this due-process requirement.[8] We note that the City does *not* argue that the availability of a judicial remedy in this case is sufficient to salvage a post-termination administrative remedy that might otherwise fall short. Instead, the City urges us to hold that regardless of the availability of a post-termination administrative remedy, recourse to the courts *alone* provides sufficient post-termination due-process protections in a case like this.

¶ 18. ■ The U.S. Supreme Court has held in some contexts that a judicial post-deprivation remedy is sufficient to satisfy due process. *Lujan v. G & G Fire Sprinklers, Inc.,* 532 U.S. 189, 195-99 (2001) (holding that availability of post-deprivation breach-of-contract claim satisfied government contractor's right to due process). But in *Lujan,* the Court distinguished the property right at issue in that case — a claim for payment under a government contract — from various property rights to which individuals have a present entitlement, such as the right "to exercise ownership dominion over real or personal property, or to pursue a gainful occupation." *Id.* at 195-96. If anything, the *Lujan* decision suggests that in a case like this, involving protected employment rights, a post-deprivation judicial remedy alone is not sufficient.

---

[8] Vermont Rule of Civil Procedure 75 provides for review of governmental action or failure to act that is not reviewable pursuant to Rule 74 and is otherwise reviewable by law.

¶ 19. ▆▆▆ We conclude that the availability of post-termination judicial remedies, as opposed to an administrative remedy, does not satisfy due process in a case in which a full administrative hearing does not occur pre-termination. We reach this conclusion for several reasons. First, the burdens of persuasion and proof in a breach-of-contract action or a Rule 75 petition place the onus on the terminated employee. Both parties agree in this case that the burden of proving "justifiable cause" to support the City's termination of Hallsmith fell to the City. Cf. *In re Merrill*, 151 Vt. 270, 276, 559 A.2d 651, 654 (1988) ("The burden rests upon the State, as the employer, to justify the dismissal of an employee by a preponderance of the evidence."). Yet in an action for breach of contract or wrongful termination, the plaintiff bears the burden of proving a breach by a preponderance of the evidence. See *Lambert v. Equinox House, Inc.*, 126 Vt. 229, 231-32, 227 A.2d 403, 404-05 (1967) (approving jury instruction allocating burden of proving terms and plaintiff's compliance with contract to plaintiff, and rejecting instruction that plaintiff is presumed to have performed under contract and the burden of proving just cause to terminate fell to the employer).

¶ 20. ▆▆▆ Likewise, in a Rule 75 action, the trial court is in the position of an appellate court in reviewing administrative agency decisions. *Garbitelli v. Town of Brookfield*, 2011 VT 122, ¶ 7, 191 Vt. 76, 38 A.3d 1133. The court's review "is normally limited to answering legal questions raised by the factual record developed in the administrative proceeding" and determining "whether there is any competent evidence to justify the adjudication." *Id.* ¶ 6 (quotation omitted).[9] Treating either a breach-of-contract claim or a Rule 75 petition as adequate post-termination process in the absence of any post-termination administrative review would effectively shift the burden of proof from the City to the terminated employee.

---

[9] Rule 75 does recognize a jury-trial right, and gives the trial court discretion to take evidence. V.R.C.P. 75(d) & Reporter's Notes. Courts invoke this authority in "very limited circumstance[s]." *Garbitelli*, 2011 VT 122, ¶ 8. In the far more typical case, "Rule 75 places the lower court in the position of an appellate court in reviewing administrative agency decisions, which typically does not entitle plaintiffs to de novo review," and the trial court admits evidence only where the administrative record is "unavailable or incomplete" and more information is required to "establish facts necessary for the trial court's review." *Id.* ¶¶ 7-8.

¶ 21. ██ Second, post-termination judicial review often provides less timely relief than administrative proceedings. Among the "fundamental requirement[s] of due process is the opportunity to be heard at a meaningful time." *Mathews*, 424 U.S. at 333 (quotation omitted). In concluding that a more modest pre-termination process passed constitutional muster, the U.S. Supreme Court relied on the availability of a more extensive hearing "at a meaningful time." *Loudermill*, 470 U.S. at 546-47. Although the Court did not establish a bright-line rule for what delay would be excessive, *id.* (nine-month adjudication is not "unconstitutionally lengthy per se"), it did establish the timeliness of the post-deprivation procedure as a constitutionally significant factor. An adequate post-termination administrative remedy can generally be furnished more rapidly than a judicial remedy. See *Baird*, 389 F.3d at 692 (noting that "a lawsuit does not satisfy the requirement of promptness, which is essential if the employee is to pursue time-sensitive remedies such as reinstatement.").

¶ 22. Moreover, under the argument that the City advances, trial courts would not sit in review of an administrative judgment concerning termination of an employee, but rather would become the factfinders in the first instance. This would risk transforming "our [trial] courts [into] hearing officers for municipalities." *In re Williams*, 154 Vt. 318, 320, 577 A.2d 686, 687 (1990). In *Williams*, we struck down as unconstitutional a statute that required a trial court to hold a hearing on misconduct charges against a police officer facing dismissal, and to certify its findings to the municipal legislative body. While the facts and legal issues in that case are distinguishable from this one, our decision in that case reflects a reluctance to insert the courts into municipal personnel decisions, and a preference for simply reviewing those decisions once made.

¶ 23. ██ Finally, the City's position is inconsistent with the logic of *Loudermill*. The starting point in *Loudermill* is that a person has a due-process right to a hearing *before* being deprived of a significant property interest. 470 U.S. at 542. Balancing a tenured employee's considerable interest in maintaining employment with the government's interest in quickly removing an unsatisfactory employee, the U.S. Supreme Court concluded that the pre-termination proceedings need not be elaborate; notice of the charges and an opportunity to respond as a check against mistaken decisions are all that is required. *Id.* at 542-46. The Court explained that "the pretermination hearing need not defini-

tively resolve the propriety of the discharge." *Id.* at 545. Instead, the pre-termination proceedings and the post-termination hearing operate in tandem to "resolve the propriety of the discharge" and to satisfy the government's obligation to provide due process when terminating a public employee who has a property right to continued employment. *Id.*

¶ 24. ■ Although the focus of the *Loudermill* decision was the extent of pre-termination process due, the Court's analysis was inextricably intertwined with its understanding that the applicable statute provided a post-termination administrative hearing. *Id.* at 546 ("Our holding rests in part on the provisions in Ohio law for a full post-termination hearing."); *id.* at 545 (noting that terminated employees "were later entitled to a full administrative hearing *and* judicial review" (emphasis added)); *id.* at 547-48 ("We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures as provided by the Ohio statute."). Nothing in the Court's reasoning in *Loudermill* supports the suggestion that the Court intended to curtail public employees' rights to administrative process to the limited pre-termination notice and opportunity to respond described in *Loudermill*. Rather, the Court wanted to ensure that, even though the employees were entitled to full hearings after the fact, the public employees had some minimal opportunity to hear and respond to the charges against them before the termination took effect.

¶ 25. ■ The City argues that the trial court should have followed the Second Circuit's decision in *Locurto*, 264 F.3d at 173-74, and argues that we should defer to that decision and its progeny.[10] In *Locurto*, two firefighters and a police officer were terminated following administrative hearings on the basis of their

---

[10] In reviewing federal constitutional questions, "we place ourselves in the position of a federal court of appeals." *State v. Hamlin*, 146 Vt. 97, 102, 499 A.2d 45, 49 (1985). In so doing, we, "for prudential and policy reasons, . . . give due respect to the decisions of the lower federal courts," as significant *persuasive* authority, keeping in mind the desirability of "uniformity of result in same geographical area," "harmonious federal-state relationships," and "judicial comity." *State v. Austin*, 165 Vt. 389, 394, 685 A.2d 1076, 1080 (1996). Ultimately, however, we must undertake our own independent analysis, considering the opinions of the Second Circuit and other lower federal courts as potentially persuasive, but not binding. *Id.* at 393-94, 685 A.2d at 1079; see also *Owsley v. Peyton*, 352 F.2d 804, 805 (4th Cir. 1965) ("Though state courts may for policy reasons follow the decisions of the

creation of a racially offensive parade float. *Id.* at 158-61. They sued, arguing that the decisionmakers at their predeprivation hearings were not neutral because, at the direction of the mayor, they had already predetermined to fire them. *Id.* at 171. The Second Circuit rejected the claim that the terminated employees were entitled to a neutral decisionmaker at the predeprivation hearing, explaining that *Loudermill* requires only that the public employer give the protected employee notice of any charges and a chance to hear and respond to any evidence against the employee before terminating the employee. *Id.* at 174. The court acknowledged that its holding was limited to situations in which the plaintiff has the opportunity for a full adversarial hearing post-termination, and noted that the judicial proceeding pursuant to Article 78 of New York's Civil Law and Practice Rules satisfied that requirement. *Id.* at 174-75.[11]

¶ 26. The trial court in this case distinguished *Locurto* on the ground that the New York civil rule in question, Article 78, provided a different scope of appeal from Vermont Rule of Civil Procedure 75. Because the former permits a petitioner to present evidence, allege that a fact is disputed, and have a trial to resolve it, N.Y. C.P.L.R. § 7804(h), it provides more expansive due-process

Court of Appeals whose circuit includes their state, they are not obliged to do so." (citation omitted)).

[11] The City suggests that other circuits have followed *Locurto*. The cases it relies upon do not support this assertion. In *Riggins v. Goodman*, 572 F.3d 1101, 1105-07 (10th Cir. 2009), a police officer who was terminated following notice and several steps of review, including an administrative hearing, challenged the sufficiency of the city's pre-termination process. Citing *Loudermill*, the Tenth Circuit concluded that the pre-termination process afforded to the officer satisfied due process. *Id.* at 1108-10. The City infers from the record that no post-termination administrative process was available to the officer, and that the court therefore concluded that a judicial remedy provided sufficient post-termination process. But the court in *Riggins* specifically noted that "Riggins is not contesting the availability or adequacy of the City's post-termination procedures. Instead, Riggins argues that he was not afforded any pretermination process — that the only process he received was after his termination." *Id.* at 1108 n.2 (citation omitted). Because that was the issue in the case, we do not know from the opinion what post-termination administrative process was available to the officer, nor whether the pre-termination hearing was itself sufficiently extensive to protect the officer's due-process rights even in the absence of post-termination administrative proceedings. *Garraghty v. Jordan*, 830 F.2d 1295 (4th Cir. 1987), also cited by the City, is likewise distinguishable. That case involved a five-day suspension from work rather than termination from employment, a "deprivation . . . less severe than that of the terminated employee in *Loudermill*." *Id.* at 1300.

protections to a terminated public employee than Rule 75. The City argues that the trial court's distinction of *Locurto* is unpersuasive, and that the scope of a petitioner's rights under Article 78 are comparable to those under Rule 75. In particular, the City argues that Rule 75, like Article 78, allows for trial by jury, V.R.C.P. 75(d), and affords the trial court the discretion to gather additional evidence through a de novo hearing. *Garbitelli,* 2011 VT 122, ¶ 8.

¶ 27. ▮ In reaching our conclusion, we do not rely on the distinction, if any, between Vermont's Rule 75 and New York's Article 78. For the reasons noted above, we find the Second Circuit's opinion in *Locurto* to be unpersuasive. Far more persuasive to us is the discussion of the same issue in the case of *Baird,* in which the Seventh Circuit considered whether a state breach-of-contract action provides adequate due process to protect the rights of a school superintendent facing termination, whose pre-termination hearing fell short of due-process requirements. 389 F.3d at 688. Contrasting *Lujan,* the Seventh Circuit noted that "[t]he postdeprivation remedies appropriate to the deprivation of an interest to which there is a present entitlement are characterized by promptness and by the ability to restore the claimant to possession. The underlying concept seems to be that the remedy is available before the loss has become complete and irrevocable." *Id.* at 692. The court went on to explain:

> A state law breach of contract action is not an adequate post-termination remedy for a terminated employee who possesses a present entitlement and who has been afforded only a limited pre-termination hearing. While it does provide a species of due process, a lawsuit does not satisfy the requirement of promptness, which is essential if the employee is to pursue time-sensitive remedies such as reinstatement.

*Id.* (quotation omitted). The Seventh Circuit's analysis in *Baird* is persuasive, and provides further support for our decision.

¶ 28. ▮ For the above reasons, we conclude that in the context of a tenured municipal employee protected by a "justifiable cause" provision, post-termination administrative proceedings are required to satisfy due process where pre-termination proceedings do not include a full hearing but instead meet only the

minimum pre-termination requirements of *Loudermill*. In the absence of post-termination administrative proceedings, neither a Rule 75 appeal nor a breach-of-contract action filed in the trial court provide sufficient post-termination process to satisfy the Due Process Clause.[12]

*Affirmed.*

---

[12] Although the City has a post-termination-hearing process, it has not argued that its post-termination hearing in this case met due-process requirements. It argued only that it is not required to provide a post-termination administrative hearing at all. It has not challenged the particular requirements — the right to confront adverse witnesses and an impartial adjudicator — imposed by the trial court. In the context of its argument, the City points to specific state statutes establishing a process for terminating police officers, teachers, and school support personnel, noting that those statutes do not provide for cross-examination and impartial adjudicators in connection with pre- or post-termination proceedings. The City does not cite these statutes to support an argument that it may, consistent with due process, dispense with cross-examination or an impartial adjudicator in its post-termination process. Instead, it asserts that these statutes provide support for its position that following predeprivation notice and opportunity to be heard that complies with the requirements of *Loudermill*, a post-termination opportunity for judicial review is sufficient to satisfy due process. We reject that argument for the reasons set forth above. Because the City has not argued that its post-termination administrative proceeding need not allow for cross-examination, and need not be conducted by an impartial adjudicator, we do not address the question of what procedural protections are required in the administrative proceeding.