2015 VT 83











Hallsmith v. City of Montpelier,
Fraser and Baker (2014-346)

 

2015 VT 83

 

[Filed 19-Jun-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 83
 
 


 


 
 
 No. 2014-346
 
 


 


 
 
 Gwendolyn Hallsmith
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Washington Unit,
 
 
 
 
  
 
 
 Civil Division
 
 
 
 
  
 
 
  
 
 
 
 
 City of Montpelier, William
 Fraser and Jessie Baker
 
 
 December Term, 2014
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Helen
 M. Toor, J.
 
 
 
 
  
 
 


Norman R. Blais, Burlington, for Petitioner-Appellee.

 

Bernard D. Lambek of Zalinger Cameron & Lambek, P.C.,
Montpelier, for 

  Respondents-Appellants.

 

PRESENT: 
  Reiber, C.J., Dooley, Robinson and Eaton, JJ., and Morris, Supr. J.
(Ret.), 

                    
Specially Assigned

 

 

¶ 1.            
ROBINSON, J.   This appeal calls upon us to determine
whether a post-termination judicial remedy, in the form of a breach-of-contract
action or a Vermont Rule of Civil Procedure 75 petition, is sufficient to
satisfy the due-process rights of an employee whose employment is protected by
a “for cause” requirement and who is terminated by a municipal employer
following pre-termination proceedings that do not by themselves satisfy due
process.  Appellee Gwendolyn Hallsmith petitioned for Rule 75 relief,
arguing that the City of Montpelier failed to provide her sufficient due-process
protections in terminating her employment.  The trial court agreed and
ordered the City to provide a new post-termination grievance hearing that fully
satisfies her due-process rights.  We affirm.

¶ 2.            
The following facts are uncontested.[1]  Hallsmith was the planning and
community development director for the City of Montpelier.  Her employment
was protected by a “justifiable cause” provision in the City’s personnel
plan.  In November 2013, City Manager William Fraser placed Hallsmith on
paid administrative leave, and sent a letter to her indicating that he was
contemplating firing her under the City’s personnel plan.[2]  In the letter, the city manager
described various acts of unprofessional behavior and insubordination, damage
to  relationships with key individuals and governing bodies within city
government, and inappropriate use of City resources.  He asserted that
these acts were grounds for disciplinary action under the City’s personnel
plan, and offered to meet with Hallsmith to consider any response she wanted to
make.  Hallsmith, accompanied by counsel, met with the city manager and
argued her case.  Following that meeting, the city manager dismissed
Hallsmith from employment with the City.

¶ 3.            
Hallsmith timely filed a grievance pursuant to the personnel plan, which
provides for review of disciplinary action.  The parties agreed, and
continue to agree now, that Hallsmith was a public employee with a contractual right
to continue in employment absent just cause to dismiss, and that the City bears
the burden of showing just cause to dismiss her.  The review procedure
outlined in the personnel plan provides that the grievance hearing shall be
before the city manager or the city manager’s designee; that “[t]he method and
manner of conducting [the] hearing . . . shall be at the
discretion of the City Manager”; that the employee “has the right to be
represented by counsel and to present any material, witnesses or evidence
helpful to the employee’s case”; and that “the administration has similar
rights.”  The city manager designated Jessie Baker, the assistant city
manager, to serve as hearing officer.

¶ 4.            
Hallsmith objected to the assistant city manager’s appointment as
hearing officer, pointing out that the assistant city manager reported directly
to the city manager and had been personally involved in the events leading up
to Hallsmith’s termination.  Under these circumstances, Hallsmith believed
that the assistant city manager could not be an impartial adjudicator.
 Hallsmith also objected to many of the procedural rules for the hearing,
arguing that they violated her due-process rights.  Among other things,
she objected to the rules of evidence that were applied in the proceeding and
the denial of her right to cross-examine witnesses.

¶ 5.            
At the hearing, the city attorney was present for the stated purpose of
advising the assistant city manager in her adjudicative capacity rather than to
represent the city manager or the City’s interest.  Nevertheless, the city
attorney questioned Hallsmith and her witnesses extensively.  Hallsmith
was not permitted to cross-examine the city manager, the City’s only
witness.  The assistant city manager upheld the City’s termination
decision.

¶ 6.            
Hallsmith subsequently filed a Rule 75 petition in the trial court,[3] seeking reinstatement to her position,
reimbursement for lost compensation, and other remedies.[4]  In her petition, Hallsmith
contested the merits of her termination, arguing that the City’s decision to
terminate her employment was not supported by sufficient evidence of
justifiable cause, and that the hearing officer’s decision to uphold the
termination was not supported by the evidence and applied the wrong legal
standard.  She also raised a due-process challenge to the post-termination
hearing procedures.  In particular, she argued that the assistant city
manager was not an impartial decisionmaker and that the procedures in the
grievance hearing did not satisfy her due-process rights.  She
specifically objected to reliance on hearsay evidence which she asserted was
“excessive” and “unreliable”; to the ban on cross-examination by Hallsmith,
contrasted with “vigorous and extensive cross-examination” by the city
attorney; and to the city attorney’s “dual and conflicting roles as advisory to
the hearing officer and presenter of the City’s case against Hallsmith.”[5]

¶ 7.            
In response, the City filed a motion to dismiss the due-process claim,
arguing that Hallsmith got all the process that was due.  The City did not
argue that the post-termination grievance hearing was constitutionally
adequate.  Instead, its sole argument was that the pre-termination Loudermill
meeting, combined with the availability of a post-termination judicial remedy—a
Rule 75 petition challenging governmental action or a common-law action for
breach of contract—satisfied due process.  The City argued that Hallsmith
was not entitled to a post-termination administrative hearing at all, and so
any flaws in the grievance hearing were irrelevant.[6]  On the merits, the City argued that
there was credible evidence establishing justifiable cause for the assistant
city manager’s decision to sustain the City’s firing of Hallsmith.

¶ 8.            
The trial court rejected the City’s argument that the availability of a
post-termination judicial remedy in the form of a Rule 75 petition or a
breach-of-contract action satisfied due process.  The court relied heavily
on Baird v. Board of Education, 389 F.3d 685, 692-93 (7th Cir. 2004), in
which the United States Court of Appeals for the Seventh Circuit concluded that
a state breach-of-contract action did not provide adequate due process to
protect the rights of a school superintendent whose pre-termination hearing
fell short of due-process requirements.  The trial court distinguished a
Second Circuit decision holding that judicial review similar to the Rule 75
review in this case was sufficient in lieu of a post-termination administrative
hearing.  See Locurto v. Safir, 264 F.3d 154, 173-75 (2d Cir.
2001).  The trial court granted the Rule 75 petition and ordered the City
“to provide Hallsmith a new grievance hearing that fully satisfies Hallsmith’s
due process rights, including her rights to confront adverse witnesses and to
an impartial adjudicator.”[7]
 The City appeals.

¶ 9.            
The essential facts concerning the proceedings below, as opposed to the
merits of the City’s termination of Hallsmith, are not in dispute.  “We
review questions of law, including whether the requirements of due process have
been satisfied, de novo.”  In re New Cingular Wireless PCS, LLC,
2012 VT 46, ¶ 11, 192 Vt. 20, 54 A.3d 141.

¶ 10.        
The Fourteenth Amendment provides that no state shall “deprive any
person of life, liberty, or property, without due process of law.”  U.S.
Const. amend. XIV, § 1.  To show a violation of procedural due
process, an individual must (1) identify a protected property right,
(2) show that the state or a state actor has deprived the individual of
that right; and (3) show that the deprivation was effected without due
process.  Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of
Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994).

¶ 11.        
Here, the first two elements are uncontested.  Hallsmith had a
property right in continued employment by the City because the city’s personnel
plan (adopted under the city charter, which is incorporated into state law, 24
App. V.S.A. chap. 5, § 907) granted her tenure in office unless
“justifiable cause” existed to dismiss her.  See Cleveland Bd. of Educ.
v. Loudermill, 470 U.S. 532, 538 (1985) (“Property interests are not
created by the Constitution, ‘they are created and their dimensions are defined
by existing rules or understandings that stem from an independent source such
as state law.’ ” (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577
(1976))).
 Hallsmith’s firing by the City therefore constitutes a deprivation of a
property right.

¶ 12.        
This appeal deals exclusively with the third prong: whether the deprivation
was effected without due process of law.  Morrissey v. Brewer, 408
U.S. 471, 481 (1972) (“Once it is determined that due process applies, the
question remains what process is due.”).  “The fundamental requirement of
due process is the opportunity to be heard at a meaningful time and in a
meaningful manner.”  Mathews v. Eldridge, 424 U.S. 319, 333 (1976)
(quotation omitted).  The “essential principle” of the Due Process Clause
is that the government, before effecting a deprivation of a “constitutionally
protected property interest,” is required to furnish “notice and opportunity
for [a] hearing appropriate to the nature of the case.”  Loudermill,
470 U.S. at 542 (quotations omitted).  “[D]ue process is flexible and
calls for such procedural protections as the particular situation demands.”
 Mathews, 424 U.S. at 334 (quoting Morrissey, 408 U.S. at
481).

¶ 13.        
In the context of termination of a tenured public employee’s employment,
the U.S. Supreme Court has held that, given the government’s interest in
quickly removing an unsatisfactory employee, due process may be satisfied by a
combination of a pre-termination opportunity to respond, coupled with more
extensive post-termination procedures.  Loudermill, 470 U.S. at
546-47.  The Court explained that because “[d]ismissals for cause will
often involve factual disputes,” having “some opportunity for the employee to
present [his or her] side of the case is . . . of obvious value in
reaching an accurate decision.”  Id. at 543.  Affording such
an opportunity mitigates the risk of error.  Id. at 545-46.  The governmental interest in immediate termination does not
outweigh these interests.  Id. at 546.  These pre-termination
procedures need not be elaborate.  An acceptable pre-termination
procedure will consist of “oral or written notice of the charges,” an
“explanation of the employer’s evidence,” and an opportunity for the employee
to present the employee’s own side of the story.  Id.

¶ 14.        
The Loudermill Court explained that “ ‘something less’ than
a full evidentiary hearing” was acceptable at the pre-termination stage because
a state statute applicable in that case provided a right to “a full
administrative hearing and judicial review” post-termination.  Id.
at 545 (quoting Mathews, 424 U.S. at 343).  The Court held that
when such post-termination remedies are available to “definitively resolve the
propriety of the discharge,” the pre-termination process may be merely an “an
initial check against mistaken decisions.”  Id. at 545-46.  Loudermill
did not directly speak to the requirements of a “full post-termination
hearing,” noting only that due process “requires provision of a hearing ‘at a
meaningful time.’ ”  Id. at 546-47 (quoting Armstrong v.
Manzo, 380 U.S. 545, 552 (1965)).

¶ 15.        
Hallsmith does not challenge the adequacy of the pre-termination hearing
in this case, which took place when Hallsmith and the city manager met before
Hallsmith was fired.  The fact that the pre-termination process was
minimal, however, is relevant because the degree of post-termination process
required is linked to the degree of pre-termination process offered.  See id.
at 545 (stating that the minimally acceptable degree of “formality and
procedural requisites” at pre-termination hearing “depend[s] upon . . .
the nature of the subsequent proceedings” (emphasis added) (quotation
omitted)).  “The general rule is that the less the predeprivation process,
the greater must be the post-deprivation process.”  Cassim v. Bowen,
824 F.2d 791, 798 (9th Cir. 1987).  If only a summary pre-termination
hearing is conducted, “due process requires that a discharged employee’s
post-termination hearing be substantially more ‘meaningful.’ ”  Mitchell
v. Fankhauser, 375 F.3d 477, 480 (6th Cir. 2004) (quoting Carter v. W.
Reserve Psychiatric Habilitation Ctr., 767 F.2d 270, 273 (6th Cir. 1985)).

¶ 16.        
On the other hand, if the pre-termination hearing features the full
range of protections required by due process, then the pre-termination hearing
may be all the process that is due, with no post-termination hearing
required.  Baird, 389 F.3d at 692 (holding that “when the only
available post-termination remedy is the opportunity to bring a state breach of
contract suit, the pre-termination hearing . . . must fully satisfy
the due process requirements of confrontation and cross-examination in addition
to the minimal Loudermill requirements of notice and an opportunity to
be heard”).

¶ 17.        
In this case, because the pre-termination hearing was of the more
minimal Loudermill variety, Hallsmith was undoubtedly entitled to a more
complete post-termination process.  The question is whether the
availability of a breach-of-contract action or a Rule 75 petition in the trial
court is sufficient to satisfy this due-process requirement.[8]  We note that the City does not
argue that the availability of a judicial remedy in this case is sufficient to
salvage a post-termination administrative remedy that might otherwise fall
short.  Instead, the City urges us to hold that regardless of the
availability of a post-termination administrative remedy, recourse to the
courts alone provides sufficient post-termination due-process
protections in a case like this.

¶ 18.        
The U.S. Supreme Court has held in some contexts that a judicial
post-deprivation remedy is sufficient to satisfy due process.  Lujan v.
G & G Fire Sprinklers, Inc., 532 U.S. 189, 195-99 (2001) (holding that
availability of post-deprivation breach-of-contract claim satisfied government
contractor’s right to due process).  But in Lujan, the Court
distinguished the property right at issue in that case—a claim for payment
under a government contract—from various property rights to which individuals
have a present entitlement, such as the right “to
exercise ownership dominion over real or personal property, or to pursue a
gainful occupation.”  Id. at 195-96.  If anything, the Lujan
decision suggests that in a case like this, involving protected employment
rights, a post-deprivation judicial remedy alone is not sufficient.

¶ 19.        
We conclude that the availability of post-termination judicial remedies,
as opposed to an administrative remedy, does not satisfy due process in a case
in which a full administrative hearing does not occur pre-termination.  We
reach this conclusion for several reasons.  First, the burdens of
persuasion and proof in a breach-of-contract action or a Rule 75 petition place
the onus on the terminated employee.  Both parties agree in this case that
the burden of proving “justifiable cause” to support the City’s termination of
Hallsmith fell to the City.  Cf. In re Grievance of Merrill, 151
Vt. 270, 276, 559 A.2d 651, 654 (1988) (“The burden rests upon the State, as
the employer, to justify the dismissal of an employee by a preponderance of the
evidence.”). Yet in an action for breach of contract or wrongful termination,
the plaintiff bears the burden of proving a breach by a preponderance of the
evidence.  See Lambert v. Equinox House, Inc., 126 Vt. 229, 231-32,
227 A.2d 403, 404-05 (1967) (approving jury instruction allocating burden of
proving terms and plaintiff’s compliance with contract to plaintiff, and
rejecting instruction that plaintiff is presumed to have performed under
contract and the burden of proving just cause to terminate fell to the
employer).

¶ 20.        
Likewise, in a Rule 75 action, the trial court is in the position of an
appellate court in reviewing administrative agency decisions.  Garbitelli
v. Town of Brookfield, 2011 VT 122, ¶ 7, 191 Vt. 76, 38 A.3d
1133.  The court’s review “is normally limited to answering legal
questions raised by the factual record developed in the administrative
proceeding” and determining “whether there is any competent evidence to justify
the adjudication.”  Id. ¶ 6 (quotation omitted).[9]  Treating either a
breach-of-contract claim or a Rule 75 petition as adequate post-termination
process in the absence of any post-termination administrative review would
effectively shift the burden of proof from the City to the terminated employee.

¶ 21.        
Second, post-termination judicial review often
provides less timely relief than administrative proceedings.  Among the “fundamental
requirement[s] of due process is the opportunity to be heard at a meaningful
time.”  Mathews, 424 U.S. at 333 (quotation omitted).  In
concluding that a more modest pre-termination process passed constitutional
muster, the U.S. Supreme Court relied on the availability of a more extensive
hearing “at a meaningful time.”  Loudermill, 470 U.S. at
546-47.  Although the Court did not establish a bright-line rule for what
delay would be excessive, id. (nine-month adjudication is not
“unconstitutionally lengthy per se”), it did establish the timeliness of the
post-deprivation procedure as a constitutionally significant factor.  An
adequate post-termination administrative remedy can generally be furnished more
rapidly than a judicial remedy.  See Baird, 389 F.3d at 692 (noting
that “a lawsuit does not satisfy the requirement of promptness, which is
essential if the employee is to pursue time-sensitive remedies such as
reinstatement”).

¶ 22.        
Moreover, under the argument that the City advances, trial courts would
not sit in review of an administrative judgment concerning termination
of an employee, but rather would become the factfinders in the first
instance.  This would risk transforming “our [trial] courts [into] hearing
officers for municipalities.”  In re Williams, 154 Vt. 318, 320,
577 A.2d 686, 687 (1989).  In Williams, we struck down as
unconstitutional a statute that required a trial court to hold a hearing on
misconduct charges against a police officer facing dismissal, and to certify
its findings to the municipal legislative body.  While the facts and legal
issues in that case are distinguishable from this one, our decision in that
case reflects a reluctance to insert the courts into municipal personnel
decisions, and a preference for simply reviewing those decisions once made.

¶ 23.        
Finally, the City’s position is inconsistent with the logic of Loudermill. 
The starting point in Loudermill is that a person has a due-process
right to a hearing before being deprived of a significant property
interest.  470 U.S. at 542.  Balancing a tenured employee’s
considerable interest in maintaining employment with the government’s interest
in quickly removing an unsatisfactory employee, the U.S. Supreme Court
concluded that the pre-termination proceedings need not be elaborate; notice of
the charges and an opportunity to respond as a check against mistaken decisions
are all that is required.  Id. at 542-46.  The Court explained
that “the pretermination hearing need not definitively
resolve the propriety of the discharge.”  Id. at 545. 
Instead, the pre-termination proceedings and the post-termination hearing
operate in tandem to “resolve the propriety of the discharge” and to satisfy
the government’s obligation to provide due process when terminating a public
employee who has a property right to continued employment.  Id.

¶ 24.        
Although the focus of the Loudermill decision was the extent of
pre-termination process due, the Court’s analysis was inextricably intertwined
with its understanding that the applicable statute provided a post-termination
administrative hearing.  Id. at 546 (“Our holding rests in part on
the provisions in Ohio law for a full post-termination hearing.”); id.
at 545 (noting that terminated employees “were
later entitled to a full administrative hearing and judicial review”
(emphasis added)); id. at 547-48 (“We
conclude that all the process that is due is provided by a pretermination
opportunity to respond, coupled with post-termination administrative procedures as
provided by the Ohio statute.”).  Nothing in the Court’s reasoning in Loudermill
supports the suggestion that the Court intended to curtail public employees’
rights to administrative process to the limited pre-termination notice and
opportunity to respond described in Loudermill.  Rather, the Court
wanted to ensure that, even though the employees were entitled to full hearings
after the fact, the public employees had some minimal opportunity to hear and
respond to the charges against them before the termination took effect.

¶ 25.        
The City argues that the trial court should have followed the Second
Circuit’s decision in Locurto, 264 F.3d at 173-74, and argues
that we should defer to that decision and its progeny.[10]  In Locurto, two
firefighters and a police officer were terminated following administrative
hearings on the basis of their creation of a racially offensive parade
float.  Id. at 158-61.  They sued, arguing that the
decisionmakers at their predeprivation hearings were not neutral because, at
the direction of the mayor, they had already predetermined to fire them.  Id.
at 171.  The Second Circuit rejected the claim that the terminated
employees were entitled to a neutral decisionmaker at the predeprivation
hearing, explaining that Loudermill requires only that the public employer give the protected employee notice of
any charges and a chance to hear and respond to any evidence against the
employee before terminating the employee.  Id. at 174.  The
court acknowledged that its holding was limited to situations in which the
plaintiff has the opportunity for a full adversarial hearing post-termination,
and noted that the judicial proceeding pursuant to Article 78 of New York’s
Civil Law and Practice Rules satisfied that requirement.  Id. at
174-75.[11]

¶ 26.        
The trial court in this case distinguished Locurto on the ground
that the New York civil rule in question, Article 78, provided a different
scope of appeal from Vermont Rule of Civil Procedure 75.  Because the
former permits a petitioner to present evidence, allege that a fact is
disputed, and have a trial to resolve it, N.Y. C.P.L.R. § 7804(h), it
provides more expansive due-process protections to a terminated public employee
than Rule 75.  The City argues that the trial court’s distinction of Locurto
is unpersuasive, and that the scope of a petitioner’s rights under Article 78
are comparable to those under Rule 75.  In particular, the City argues
that, Rule 75, like Article 78, allows for trial by jury, V.R.C.P. 75(d), and
affords the trial court the discretion to gather additional evidence through a
de novo hearing.  Garbitelli, 2011 VT 122, ¶ 8.

¶ 27.        
In reaching our conclusion, we do not rely on the distinction, if any,
between Vermont’s Rule 75 and New York’s Article 78.  For the reasons
noted above, we find the Second Circuit’s opinion in Locurto to be
unpersuasive.  Far more persuasive to us is the discussion of the same
issue in the case of Baird, in which the Seventh Circuit considered
whether a state breach-of-contract action provides adequate due process to
protect the rights of a school superintendent facing termination, whose
pre-termination hearing fell short of due-process requirements.  389 F.3d
at 688.  Contrasting Lujan, the Seventh Circuit noted that “[t]he
postdeprivation remedies appropriate to the deprivation of an interest to which
there is a present entitlement are characterized by promptness and by the
ability to restore the claimant to possession.  The underlying concept
seems to be that the remedy is available before the loss has become complete
and irrevocable.”  Id. at 692.  The court went on to explain:

  A state law breach of contract action is not an
adequate post-termination remedy for a terminated employee who possesses a
present entitlement and who has been afforded only a limited pre-termination
hearing.  While it does provide a species of due process, a lawsuit does
not satisfy the requirement of promptness, which is essential if the employee
is to pursue time-sensitive remedies such as reinstatement.

 

Id.
(quotation omitted).  The Seventh Circuit’s analysis in Baird is
persuasive, and provides further support for our decision.

¶ 28.        
For the above reasons, we conclude that in the context
of a tenured municipal employee protected by a “justifiable cause”
provision, post-termination administrative proceedings
are required to satisfy due process where pre-termination proceedings do not
include a full hearing but instead meet only the minimum pre-termination
requirements of Loudermill.  In the absence of post-termination
administrative proceedings, neither a Rule 75 appeal nor a breach-of-contract
action filed in the trial court provide sufficient post-termination process to
satisfy the Due Process Clause.[12]

           
Affirmed.

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 














[1]
 The trial court granted Hallsmith’s Rule 75 motion on the basis of
written pleadings by the parties and the record of the proceedings before the
City.

 





[2] 
The City Charter authorizes the City to adopt a personnel plan.  24 App.
V.S.A. chap. 5, § 907.





[3]
 Hallsmith filed an initial petition that focused on the merits of the
City’s termination decision but did not expressly raise the due-process
claim.  She subsequently filed a motion to amend her petition to include a
due-process claim and a claim that the city manager lacked the legal authority
to terminate her.  Over the City’s objections, the trial court granted
these motions to amend.

 





[4] 
In her petition, Hallsmith named the City, the city manager, and the assistant
city manager as defendants.  We refer to the defendants collectively as
“the City.”





[5] 
Hallsmith also argued that under 24 V.S.A. § 4448(a), only the city
council had the authority to terminate her employment.  The trial court
rejected this argument, pointing to more specific language in the city charter
that specifically assigned to the city manager the authority to hire and fire
the zoning administrator.  The authority of the city manager to terminate
Hallsmith’s employment is not at issue in this appeal.

 





[6]  The City maintained this position even
before the grievance hearing took place, writing to Hallsmith on two occasions
that the City “[did] not consider the grievance procedure to be a required
remedy that must be ‘exhausted’ prior to any court action.  In short, you
would not waive any legal rights or remedies you may otherwise have if you were
to choose not to pursue the grievance procedure.”





[7]
 With respect to Hallsmith’s claim for lost wages and reinstatement, the
trial court noted that Hallsmith did not bring a breach-of-contract action or
seek relief under 42 U.S.C. § 1983, and that proving the due-process
violation does not demonstrate that the City lacked justifiable cause for the
termination.  For that reason, the court concluded that the appropriate
remedy was a new post-termination grievance hearing that fully complies with
due process.





[8]
 Vermont Rule of Civil Procedure 75 provides for review of governmental
action or failure to act that is not reviewable pursuant to Rule 74 and is
otherwise reviewable by law.





[9]
 Rule 75 does recognize a jury-trial right, and gives the trial court
discretion to take evidence.  V.R.C.P. 75(d) & Reporter’s Note. 
Courts invoke this authority in “very limited circumstance[s].”  Garbitelli, 2011 VT 122, ¶ 8.  In the far more typical case, “Rule 75
places the lower court in the position of an appellate court in reviewing
administrative agency decisions, which typically does not entitle plaintiffs to
de novo review,” and the trial court admits evidence only where the
administrative record is “unavailable or incomplete” and more information is
required to “establish facts necessary for the trial court’s review.”  Id.
¶¶ 7-8.





[10]
 In reviewing federal constitutional questions, “we place ourselves in the
position of a federal court of appeals.”  State v. Hamlin, 146 Vt.
97, 102, 499 A.2d 45, 49 (1985).  In so doing, we, “for prudential and
policy reasons, . . . give due respect to the decisions of the lower
federal courts,” as significant persuasive authority, keeping in mind
the desirability of “uniformity of result in same geographical area,”
“harmonious federal-state relationships,” and “judicial comity.”  State
v. Austin, 165 Vt. 389, 394, 685 A.2d 1076, 1080 (1996).  Ultimately,
however, we must undertake our own independent analysis, considering the
opinions of the Second Circuit and other lower federal courts as potentially
persuasive, but not binding.  Id. at 393-94, 685 A.2d at 1079; see
also Owsley v. Payton, 352 F.2d 804, 805 (4th Cir. 1965) (“Though state
courts may for policy reasons follow the decisions of the Court of Appeals
whose circuit includes their state, they are not obliged to do so.” 
(citation omitted)).

 





[11]  The City suggests that other circuits
have followed Locurto.  The cases it relies upon do not support
this assertion.  In Riggins v. Goodman, 572 F.3d 1101, 1105-07
(10th Cir. 2009), a police officer who was terminated following notice and
several steps of review, including an administrative hearing, challenged the
sufficiency of the city’s pre-termination process.  Citing Loudermill,
the Tenth Circuit concluded that the pre-termination process afforded to the
officer satisfied due process.  Id. at 1108-10.  The City
infers from the record that no post-termination administrative process was
available to the officer, and that the court therefore concluded that a
judicial remedy provided sufficient post-termination process.  But the
court in Riggins specifically noted that “Riggins
is not contesting the availability or adequacy of the City’s post-termination
procedures.  Instead, Riggins argues that he was not afforded any
pretermination process—that the only process he received was after his
termination.”  Id. at 1108 n.2 (citation omitted).  Because
that was the issue in the case, we do not know from the opinion what
post-termination administrative process was available to the officer, nor
whether the pre-termination hearing was itself sufficiently extensive to
protect the officer’s due-process rights even in the absence of post-termination
administrative proceedings.  Garraghty v. Jordan, 830 F.2d
1295 (4th Cir. 1987), also cited by the City, is likewise
distinguishable.  That case involved a five-day suspension from work
rather than termination from employment, a “deprivation . . . less
severe than that of the terminated employee in Loudermill.”  Id.
at 1300.





[12]
 Although the City has a post-termination-hearing process, it has not argued that its post-termination hearing in this
case met due-process requirements.  It argued only that it is not required
to provide a post-termination administrative hearing at all.  It has not
challenged the particular requirements—the right to confront adverse witnesses
and an impartial adjudicator—imposed by the trial court.  In the context
of its argument, the City points to specific state statutes establishing a
process for terminating police officers, teachers, and school support
personnel, noting that those statutes do not provide for cross-examination and impartial
adjudicators in connection with pre- or post-termination proceedings.  The
City does not cite these statutes to support an argument that it may,
consistent with due process, dispense with cross-examination or an impartial
adjudicator in its post-termination process.  Instead, it asserts that
these statutes provide support for its position that following predeprivation
notice and opportunity to be heard that complies with the requirements of Loudermill,
a post-termination opportunity for judicial review is sufficient to satisfy due
process.  We reject that argument for the reasons set forth above. 
Because the City has not argued that its post-termination administrative
proceeding need not allow for cross-examination, and need not be conducted by
an impartial adjudicator, we do not address the question of what procedural
protections are required in the administrative proceeding.