*Kirkland v. Rutherford*, 183-3-18 Wncv (Teachout, J., Mar. 21, 2019)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

**SUPERIOR COURT**                                                              **CIVIL DIVISION**
**Washington Unit**                                                            **Docket No. 183-3-18 Wncv**

**HIEHEEM KIRKLAND,**
        Petitioner

        **v.**

**JOSHUA RUTHERFORD,**
**Vermont Department of Corrections,**
        **Respondent**

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

Hieheem Kirkland is an inmate in the custody of the Commissioner of the Vermont Department of Corrections. A final hearing was held on February 14, 2019 on his petition for Rule 75 Review of Governmental Action. He seeks expungement of a disciplinary conviction on the grounds that he was not afforded due process because of the involvement of the Hearing Officer in the incident. Mr. Kirkland was present and represented by Attorney Kelly Green. The Respondent was represented by Attorney Andrew Gilbertson. The court heard evidence and oral argument. Based on the credible evidence, the court makes the following Findings of Fact, Conclusions of Law, and Order.

### Findings of Fact

On February 6, 2018, an incident occurred in prison involving conduct of Mr. Kirkland at the end of a recreation period. Officer Burdick, who was in charge of ending the recreation period, says that Mr. Kirkland, who was slow to end his recreation activity, said to him, "I am going to punch you square in the face." Officer Burdick got on the telephone and called Officer Bowman and informed him of what had just occurred. In a few moments, Officers Bowman and Provencher arrived with shackles, put Mr. Kirkland in the shackles, and escorted him to segregation pending a hearing on the disciplinary charge arising out of the incident.

The hearing on the disciplinary charge was held a few days later. Mr. Kirkland arrived and was surprised to discover that Officer Provencher was the Hearing Officer. Mr. Kirkland objected to Officer Provencher being the Hearing Officer and stated that he had a conflict because he was part of the events involved in the disciplinary report. Officer Provencher said, "Yes I can because I did not write the report." The hearing was held. Mr. Kirkland did not deny making the statement but contended that it was addressed to another inmate and not Officer Burdick. Officer Provencher found Mr. Kirkland guilty of the disciplinary charge.

Procedural rules for prison disciplinary hearings are found in Directive 410.01 effective May 1, 2012 entitled "Facility Rules and Inmate Discipline." (Exhibit B) These rules define a

Hearing Officer as "A person designated by the Commissioner of Corrections and assigned by the Superintendent or designee to conduct administrative due process hearings." Directive 410.01, Definitions at 4. The Rules do not specifically state that a person who had some involvement or knowledge of the underlying incident cannot serve as a Hearing Officer. In addition to the statement just quoted that the Hearing Officer is to conduct "due process hearings," they do state that:

—"The Hearing Officer may only assign as "Presenting Officer an employee who was not involved in the violation incident." Directive 410.01, Procedural Guidelines ¶ 5(e) at 10.

—"The Hearing Officer will conduct the hearing in a professional and fair manner." Directive 410.01, Procedural Guidelines ¶ 5(f)(ii) at 11.

The evidence gives rise to a strong inference that when Officer Burdick called Officer Bowman to report the incident, and then Officers Bowman and Provencher were immediately dispatched to escort Mr. Kirkland to segregation, Officer Provencher heard from Officer Bowman about the reason for escorting Mr. Kirkland to segregation. In other words, he heard Officer Burdick's version of what had occurred through Officer Bowman. It is telling that when Mr. Kirkland objected at the hearing to Officer Provencher serving as Hearing Officer, Officer Provencher did not deny that he had heard about the incident at the time it occurred. Rather, he relied on the explanation that he had not been the one to write the report. It is difficult to conclude that Officer Provencher would have no understanding at all why he was escorting Mr. Kirkland to segregation.

The evidence supports the finding of fact that Officer Provencher learned of Officer Burdick's version of what had occurred immediately after the incident as part of his involvement in being one of the officers to escort Mr. Kirkland to segregation.

## Conclusions of Law

The parties do not disagree that Mr. Kirkland's due process rights entitled him to a fair hearing, and that a fair hearing included an impartial decision maker. They disagree as to whether Mr. Provencher's involvement in the underlying events was sufficient to disqualify him as an impartial decision maker. The court has considered the parties' arguments and reviewed the available caselaw.[1] Decisions vary and tend to depend on the specific facts of each case.

---

[1] The State's citations to cases in the prison setting were limited to unpublished decisions in courts of the federal Second Circuit. The court reviewed the cited cases but wishes to emphasize that it reviewed caselaw in the prison context available from jurisdictions nationwide. "In reviewing federal constitutional questions, 'we place ourselves in the position of a federal court of appeals.' In so doing, we, 'for prudential and policy reasons, . . . give due respect to the decisions of the lower federal courts,' as significant persuasive authority, keeping in mind the desirability of 'uniformity of result in same geographical area,' 'harmonious federal–state relationships,' and 'judicial comity.' Ultimately, however, we must undertake our own independent analysis, considering the opinions of the Second Circuit and other lower federal courts as potentially persuasive, but not binding." *Hallsmith v. City of Montpelier*, 2015 VT 83, ¶ 25 n.10, 199 Vt. 488 (citations omitted).

One treatise has summarized the case law as follows:

> One rather egregious example of a lack of the appearance of impartiality occurred when the hearing examiner was the father of the prison guard who made the accusations and where the charge rested on whether the guard or the prisoner was the more credible person. One court has extended the analysis of these cases to include not only persons intimately involved in the investigatory and accusatory stages but also their immediate inferiors; although another has held that while in some circumstances, the nature of one's position or the relationship between that position and the outcome of adjudications disqualifies a person from serving with the impartiality mandated by the Due Process Clause, the fact that decision-maker has responsibilities to uphold standards of conduct does not inevitably mean that he is disqualified from adjudicating allegations that those standards have been breached. In instances where strong personal animosity exists between a prisoner and a prison official, the latter should not serve on that inmate's disciplinary committee. In short, most courts seem to agree that inmates are entitled to a fair and impartial decision-maker who has had no direct personal involvement in the incident that is the subject of the hearing, although not all courts agree on the dividing line between what is fair and impartial and what is not.

2 Michael B. Mushlin, Rights of Prisoners § 10:47 (5th ed.) (footnotes omitted).

The court acknowledges the caselaw emphasizing that the administrative adjudicators of prison disciplinary actions should not be held to the same level of impartiality one would reasonably expect in a court of law. See, e.g., *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002) (noting that "[t]he requirements of due process are considerably relaxed in the setting of prison discipline"). The court also acknowledges, however, the venerable maxim that "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954).

On balance, in this case, the court is persuaded that the circumstances weigh in favor of the conclusion that Officer Provencher should have been disqualified as Mr. Kirkland's hearing officer. The administrative decision maker in this case was not an otherwise impartial panel for which Officer Provencher was but one member. Officer Provencher was the sole finder of fact. He was not uninvolved in the underlying events. He may not have been present when the alleged threat was asserted, but he was part of the team that was advised about the event and the need to respond to it, and he participated in that response. Obviously, that response would have been unnecessary without some prevailing belief that the event in fact had occurred and necessitated a response, and the response was undertaken *immediately* when, one may infer, emotions may still have been high. By contrast, there was no evidence presented to the effect that Mr. Provencher nevertheless was, or could have appeared to be, a reasonably impartial hearing officer, or that there would have been any difficulty having someone else who truly was uninvolved serving as hearing officer.

This violation, however, does not counsel in favor of the result that Mr. Kirkland seeks, which is expungement. The conclusion that he was entitled to a hearing officer who had no involvement in the circumstances does not mean that he should be cleared of the original charge.

3

The case instead should be remanded for a new hearing before a different hearing officer consistent with this decision.

ORDER

For the foregoing reasons, the conviction for a disciplinary violation is vacated. The matter is remanded to the Department of Corrections for a new hearing.

Dated at Montpelier, Vermont this _____ day of March 2019.

_____
Mary Miles Teachout
Superior Judge

4