2012 VT 46

# In re Petition of New Cingular Wireless PCS, LLC d/b/a AT&T Mobility

[54 A.3d 141]

No. 11-328

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed June 14, 2012

*C. Daniel Hershenson* and *Nathan H. Stearns* of *Hershenson, Carter, Scott & McGee, P.C.*, Norwich, for Appellants.

*William J. Dodge* and *Elizabeth R. Wohl* of *Downs Rachlin Martin PLLC*, Burlington, for Appellee.

¶ 1. **Robinson, J.** Barrett Holby, Grethe Holby, Kristin Holby, and Wegard Holby appeal orders of the Public Service Board granting New Cingular Wireless PCS, LLC d/b/a AT&T Mobility (AT&T) a Certificate of Public Good (CPG) authorizing the

installation of a monopine telecommunications tower and associated facilities in Weston, and denying the Holbys' motion to alter the CPG order. The Holbys' properties either abut the property on which the proposed project is to be built, or are in close proximity to it. The Holbys' appeal is grounded on their claims that they were denied procedural due process in connection with the Board proceeding. We hold that the Holbys do not have constitutionally protected interests at stake, and we affirm.

¶ 2. Pursuant to 30 V.S.A. § 248a(e), in October of 2010, AT&T provided a forty-five day prefiling notice to various entities and at least some of the Holbys; this notice provided a detailed description of the proposed project and its impacts and signaled that AT&T would be filing a petition with the Board for authorization to construct the facility. On March 18, 2011, pursuant to 30 V.S.A. § 248a, AT&T filed its petition seeking a CPG along with supporting prefiled testimony. On the same day, AT&T also sent a Notice of Filing of Application to the Holbys pursuant to 30 V.S.A. § 248a. The notice of filing stated: "If you determine that you would like to intervene in the [Board] docket, you must file a motion to intervene with the [Board] by no later than April 8, 2011."

¶ 3. The Holbys filed a motion to intervene on April 6, 2011, alleging that they have "substantial interests which may be adversely affected by the outcome of this proceeding." Specifically, the Holbys claimed that: (1) the project will result in "undue adverse aesthetic effects" on the views that they currently enjoy from their respective properties; (2) the proposed tower is located closer to Grethe and Kristin's property than the town-mandated setback line allows, and is closer than the height of the tower, potentially affecting their health and safety in the event of a collapse; (3) the project's access road may unduly adversely affect the stream and wetlands that extend onto Grethe and Kristin's property; (4) erosion from construction of the project may unduly adversely affect a stream and wetlands that extend onto Grethe and Kristin's property; and (5) "the project does not comply with applicable portions of the town plan related to strictly enforcing development controls above 2000 feet in elevation, and the specific development controls found in the town bylaws and ordinances, including height limitations, proximity to wetlands and streams, impacts on ridgelines/hilltops, access road requirements, and setbacks for rural residential districts."

¶ 4. On June 6, 2011, the Board issued an order granting the Holbys' motion to intervene. The Board reasoned that, although

the Holbys had failed to provide any evidence, other than a site plan depicting the locations of their properties, to support their contention that the project may result in the impacts they described, they had articulated a sufficient interest in ensuring that those impacts did not come to pass to warrant permissive intervention pursuant to Board Rule 2.209(B).

¶ 5. On the merits, the Board noted that no other person had claimed that the application raised a significant issue, and found that the Holbys had not provided any basis to support their contentions about the impacts of the proposed project. Moreover, the Board noted that the Holbys had not addressed the evidence filed by AT&T demonstrating that the project does not raise a significant issue under the applicable criteria. Noting that the Holbys had not requested a hearing or filed additional comments in the proceeding within the prescribed period pursuant to the Board's Procedures Order,[1] the Board concluded that the application did not raise a significant issue and no hearing was required.

¶ 6. The Board then made findings based on the prefiled testimony and comments presented, and concluded that, based on the evidence, "the petition does not raise a significant issue with respect to the relevant substantive criteria of 30 V.S.A. § 248a, the public interest is satisfied by the procedures authorized in 30 V.S.A. § 248a, and the proposed project will promote the general good of the State." Accordingly, the Board granted the requested CPG.

¶ 7. On June 14, 2011, the Holbys filed a motion to alter the Board's order on both substantive and procedural grounds. First, they argued that the project would have an undue adverse impact on aesthetics because the project would violate clear written community standards intended to preserve aesthetics. Second, they contended that the lack of sufficient notice, the absence of a hearing, and the Board's delay in granting the Holbys' motion to intervene until the time it granted AT&T's CPG violated the

---

[1] The Board's "Section 248a Order," issued on August 14, 2009, pursuant to 30 V.S.A. § 248a(k), provided that "If any person wishes to submit comments to the Board concerning an application filed pursuant to Section 248a or request a hearing, such correspondence is due at the Board within 21 calendar days of the date that the application was submitted to the Board and all required parties." Public Service Board: *Section 248a Order* (August 14, 2009), http://psb.vermont.gov/sites/psb/files/orders/2009/248aStdsandProcOrder.pdf.

Holbys' due process rights. The Holbys argued that the notice provided to them by AT&T at the time AT&T filed its petition with the Board only informed them that if they wanted to intervene they had to file their motion to intervene by April 8. That same notice did *not* explain, the Holbys noted, that the Holbys also had only twenty-one days — until April 8 — to file a request for a hearing and to file any substantive comments supporting their position. Nor did the notice reference the Board's Procedures Order, noted above, that sets forth these requirements. The Holbys apparently believed that they did not need to take any steps to advance their substantive case or to request a hearing until after the Board reviewed and ruled upon their motion to intervene.

¶ 8. The Board denied the Holbys' motion to alter on August 10, 2011. In its denial, the Board noted that AT&T provided notice of its intent to seek a CPG five months in advance of its application, complying with the prefiling notice requirements of 30 V.S.A. § 248a(e). In its advance notice, AT&T included a section informing interested parties that they may "submit comments and seek intervention in the proceeding within 21 calendar days of the date the petition was filed." The Board found that, even though AT&T's advance notice did not make reference to the Board's Section 248a Order, the actual petition filed with the Board *did*.[2] The Board concluded that the Holbys were given sufficient notice of the deadline for submitting comments and of the Procedures Order, and therefore rejected the Holbys' procedural due process claims.

¶ 9. On the substantive issues, the Board denied the Holbys' argument that the project violates a clear written community standard. First, the Board ruled that the argument should have been raised within the twenty-one day comment period following AT&T's filing and was thus untimely. The Board went on to address the merits of the argument, however, summarizing its prior analysis of the very issue raised by the Holbys and concluding that even if the Board were to consider the Holbys' claims, the Holbys had not provided a basis for altering the Board's decision.

---

[2] The Board noted that AT&T was not statutorily required to send the petition itself to the Holbys, but concluded that it was clear from their motion to intervene that the "Holbys had either acquired a copy of the petition, or had otherwise reviewed the petition."

¶ 10. On appeal, the Holbys argue that they were denied procedural due process because the notice of the Board proceedings distributed by AT&T did not inform them of the twenty-one day deadlines for hearing requests and submission of comments, nor of the Board's Procedures Order embodying those deadlines. They further argue that the Board's award of the CPG simultaneous with its grant of the Holbys' intervention motion effectively denied them the opportunity to meaningfully participate in the proceedings.

¶ 11. We review questions of law, including whether the requirements of due process have been satisfied, de novo. See, e.g., *In re R.W.*, 2011 VT 124, ¶ 34, 191 Vt. 108, 39 A.3d 682.

¶ 12. The threshold question is whether the Holbys have a constitutionally protected interest at stake. See, e.g., *In re Great Waters of Am., Inc.*, 140 Vt. 105, 108, 435 A.2d 956, 958 (1981) ("Analysis of a claim of deprivation of property without due process of law commences with a determination of whether any right requiring constitutional protection in fact is involved.").

¶ 13. The Fourteenth Amendment to the United States Constitution prohibits the deprivation of life, liberty, or property without due process of law. The Holbys do not assert that the Board's action deprived them of a possessory interest in any physical property, but rather, they assert a property interest in connection with the award of a CPG for construction of telecommunications facilities on adjoining land.[3] Such inchoate property interests "are not created by the Constitution, but rather are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Brennan v. Town of Colchester*, 169 Vt. 175, 179, 730 A.2d 601, 605 (1999) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). A property interest arises when a person has a "'legitimate claim of entitlement'" to a governmental benefit

---

[3] For that reason, *Town of Randolph v. Estate of White*, 166 Vt. 280, 693 A.2d 694 (1997), is inapposite. In that case, a property owner raised a due process challenge to the notice and procedures provided in connection with the zoning administrator's enforcement of a local ordinance *with respect to the landowner's own property*, directly and clearly implicating his property rights. *Id.* at 282, 693 A.2d at 695.

rather than a " 'unilateral expectation.' " *Id.* (quoting *Roth*, 408 U.S. at 577).

■ ¶ 14. The first question, then, is whether, by virtue of state law and rules, landowners have a constitutionally protected interest with respect to the erection of telecommunications facilities on adjoining or nearby land. For the reasons set forth above, the constitutional dimension of the rights of landowners with respect to permitting on adjoining properties depends upon the legal framework applicable to the permitting scheme in question. Where the availability of a permit for a garbage disposal facility was conditioned by the applicable statute on a finding that the permit would not give rise to a nuisance — implicitly implicating the rights of neighboring inhabitants and property owners — we concluded that neighbors had a due process right to be heard on the matter. *In re St. George*, 125 Vt. 408, 412-13, 217 A.2d 45, 47-48 (1966). On the other hand, where a permitting statute, Act 250, allowed for participation by adjoining landowners upon request within a specified period following constructive notice by publication, we concluded the statute did not create a due process right affording the adjoining landowner full due process notice and hearings protections with respect to the Act 250 proceedings. *Great Waters*, 140 Vt. at 109-10, 435 A.2d at 959.[4]

■ ■ ¶ 15. In contrast to the statute governing garbage disposal sites at issue in *St. George*, the permitting statute at issue here, 30 V.S.A. § 248a, does not call for findings or analysis of the proposed project that are tied to the specific interests of adjoining landowners. Rather, the statute requires the Board to consider a host of enumerated factors relating to aesthetics, historic sites, air and water purity, the natural environment, and the public health and safety, with due consideration to the

---

[4] In our discussion in *Great Waters*, we cited a U.S. Supreme Court opinion holding that where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant must " 'take the bitter with the sweet.' " 140 Vt. at 109, 435 A.2d at 959 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 153-54 (1974)). That Court has since repudiated the bitter-with-the-sweet rationale, holding that "property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Although that aspect of our reasoning in *Great Waters* no longer survives, the core holding — that the statute in question did not afford adjoining landowners a constitutionally protected interest in the outcome of Act 250 proceedings — does survive.

relevant criteria in referenced statutes. 30 V.S.A. § 248a(c). The statute *does* require that substantial deference be given to the plans and recommendations of municipal legislative bodies and regional planning commissions, § 248a(c)(2), but does not require any consideration of the interests of adjoining or neighboring landowners per se. Like CPG proceedings pursuant to a closely analogous statute, 30 V.S.A. § 248, proceedings pursuant to § 248a "relate only to the issue of public good, not the interests of private landowners who are or may be involved." *Vt. Elec. Power Co. v. Bandel*, 135 Vt. 141, 145, 375 A.2d 975, 978 (1977). As this Court concluded in *Bandel*, because the sole issue was whether the requested certificate advanced the public interest, and the individual property rights of property owners who might be subject to condemnation proceedings as a result of the CPG were not at issue in that proceeding, those property owners were not entitled to any special recognition or consideration. *Id.*

¶ 16. Moreover, although § 248a does provide for notice to adjoining (but not nonadjoining, neighboring) landowners, the statute does not afford adjoining neighbors automatic party status. Rather, an adjoining landowner stands in the same shoes as any member of the public with respect to intervention; the landowner can file an application to intervene pursuant to Rule 2.209 of the Board's rules, and may be allowed intervention as of right or permissive intervention if the landowner makes the requisite showing.

¶ 17. The only potential hooks on which the Holbys may hang their constitutional claims are: (1) the fact that the statute does require that AT&T provide the adjoining landowners notice of the proposed project forty-five days before AT&T files its petition, and that AT&T provide notice to the adjoining landowners that it has filed the petition;[5] and (2) the fact that in this case the Board concluded that the Holbys had articulated a sufficient interest in ensuring that certain impacts do not come to pass to warrant the grant of permissive intervention pursuant to Board Rule 2.209(B).

¶ 18. The statutory notice requirement, however, is not sufficiently robust to confer upon the adjoining landowners a constitutionally protected right. In fact, the statute requires only

---

[5] This factor provides no support for the claims of Barrett Holby, a neighboring but nonabutting landowner.

that, upon filing its petition, AT&T notify the adjoining landowners *that it has done so.* It need not even provide the adjoining landowners with a final copy of the petition as filed. Likewise, the Board's grant of permissive intervention was expressly limited to the concerns expressed in the respective motions to intervene, and was granted solely in the discretion of the Board pursuant to its rules. These factors are not sufficient to support a " 'legitimate claim of entitlement' " to a particular outcome in the § 248a proceeding, as opposed to a " 'unilateral expectation.' "[6] *Brennan,* 169 Vt. at 179, 730 A.2d at 605 (quoting *Roth,* 408 U.S. at 577).

¶ 19. We thus conclude that the Holbys do not have a constitutionally protected property interest at stake and our analysis ends, as, by all accounts, AT&T and the Board satisfied the procedural requirements of 30 V.S.A. § 248a, as well as the Board's own rules. Without a property interest at stake, the procedure and notice requirements provided by statutory and Board rules do not merit additional constitutional scrutiny.

*Affirmed.*

---

[6] Nor can the Holbys argue that their constitutionally protected interest is in a particular manner of notice or process. In the absence of a constitutionally protected property interest in the issuance or denial of AT&T's requested CPG, the Holbys have no constitutional claim to any particular procedures to protect such an interest. See *Hillside Cmty. Church, S.B.C. v. Olson,* 58 P.3d 1021, 1026 (Colo. 2002) (explaining that the U.S. Supreme Court and many state courts hold that there is "no property right in mere procedure").