NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 42

No. 2017-162

In re Petition of Conservation Law Foundation

Supreme Court

On Appeal from
Public Utility Commission

October Term, 2017

James Volz, Chair

Sandra Levine, Vermont Advocacy Center, Montpelier, for Appellant.

Craig S. Nolan and Owen J. McClain of Sheehey Furlong & Behm P.C., Burlington, for Appellee Vermont Gas Systems, Inc.

Daniel C. Burke, Department of Public Service, Montpelier, for Appellee Vermont Department of Public Service.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **ROBINSON, J.** The question in this case is whether steep increases in project cost estimates for the Addison Natural Gas Project, combined with changes in energy markets, create a "substantial change" such that Vermont Gas System, Inc. (VGS) must secure an amended certificate of public good under Public Utility Commission Rule 5.408. In ruling on Conservation Law Foundation's (CLF) separate petition for declaratory relief, distinct from post-judgment review of the Commission's certificate of public good, the Commission held that increased cost estimates for VGS's natural gas pipeline project, coupled with changes in the energy markets, were

not a "substantial change" under Rule 5.408. We defer to the Commission's reasonable interpretation of Rule 5.408 and accordingly affirm.

¶ 2. The relevant, undisputed facts and procedural history are as follows. In December 2013, under docket 7970, the Commission[1] approved a certificate of public good (CPG) for VGS's forty-one-mile natural gas pipeline traversing Addison and Chittenden Counties (the Project). Considering the criteria in 30 V.S.A. § 248, the Commission concluded that the Project "will promote the general good of the State of Vermont," subject to a condition (among others) that:

> Construction, operation, and maintenance of the proposed Project shall be in accordance with plans and evidence submitted in this proceeding. Any material deviation from these plans or a substantial change to the Project must be approved by the [Commission].

¶ 3. In July 2014, while an appeal of the CPG was pending before this Court, VGS, pursuant to Commission Rule 5.409, filed an updated capital cost estimate with the Commission. The updated estimate reflected a 41% net change in estimated cost, from $86.6 million at the time of the CPG award to $121,655,000. In September 2014, this Court granted the Commission's request for a remand of the CPG proceeding so that it could determine whether to reopen the CPG proceedings under Vermont Rule of Civil Procedure 60(b)[2] due to the estimated Project cost increases.

¶ 4. On remand, the Commission held a hearing and CLF filed a post-hearing brief arguing that the Commission should reopen the CPG proceedings. In a thirty-page decision released in October 2014, the Commission ruled that the Project cost estimate increase was "not of such a material and controlling nature so as to change [the Commission's] previous

---

[1] Effective July 2017, what was the Public Service Board officially became the Public Utility Commission. 2017, No. 53, §§ 9-13. We refer to this body as the Commission, even when discussing dockets or activities that occurred before the name change.

[2] Rule 60(b) applies to Commission proceedings pursuant to Commission Rule 2.221.

determination that approval of the Project pursuant to the criteria of 30 V.S.A. § 248 will promote the general good of Vermont."

¶ 5.  In December 2014, VGS filed a second update of the estimated capital costs of the project.  By that time, estimated project costs had risen to $153.6 million, representing a 78% increase over the original estimate at the time of the CPG award.  In February 2015, this Court granted the Commission's request for a second remand in docket 7970 to enable the Commission to again consider whether to reopen the CPG proceedings under Rule 60(b).

¶ 6.  After an opportunity for discovery, the Commission held evidentiary hearings.  The Commission considered the revised cost estimates as well as arguments that the CPG did not serve the public good in light of changes in energy markets.  CLF filed a post-hearing brief.  On January 8, 2016, the Commission held that the new evidence—"the most significant of which" being "the much higher estimated cost of the Project"—did not alter its previous conclusion that the Project "promot[ed] the general good and is in the best interest of the state" under § 248 criteria.

¶ 7.  Meanwhile, in July 2014, during the pendency of proceedings in docket 7970, CLF filed a separate petition (docket 8330) seeking a declaratory ruling from the Commission that the Project cost increases and changes in energy markets represented a "substantial change" under Commission Rule 5.408, thus requiring an amended CPG.  Commission Rule 5.408 states:

> An amendment to a certificate of public good for construction of generation or transmission facilities, issued under 30 V.S.A. § 248, shall be required for a substantial change in the approved proposal. For the purpose of this subsection, a substantial change is a change in the approved proposal that has the potential for significant impact with respect to any of the criteria of Section 248(b) or on the general good of the state under Section 248(a).

Requirements for Petitions to Construct Electric and Gas Facilities § 5.408, Code of Vt. Rules 30 000 5400, http://www.lexisnexis.com/hottopics/codeofvtrules [hereinafter Rule 5.408].  After the Commission decided not to reopen the CPG proceedings on the first remand in docket 7970, VGS moved to close docket 8330 because, it argued, the Commission had already ruled on the issues

3

raised by CLF—i.e., that the Commission should reopen the CPG proceedings due to the increased Project costs and changes in energy markets. The Commission denied this motion and set a schedule for the proceedings that included briefing and a hearing with oral argument.

¶ 8. In March 2017, the Commission denied CLF's request for declaratory relief. The Commission explained that whether increased project costs and changes in energy markets are a "substantial change" under Rule 5.408 was a matter of first impression. It began by reading Rule 5.408 together with Rule 5.409. The Commission noted that when it promulgated Rule 5.408 in 2006, it simultaneously promulgated Rule 5.409, which specifically addresses reporting for cost increases. Commission Rule 5.409 states:

> Where a Vermont utility is the petitioner, or the costs of a project or a portion thereof are eligible to be recovered from ratepayers, the petitioner shall regularly monitor and update the estimated capital costs of any project it has proposed for or received approval under Section 248. When the estimated capital costs of a such a project increase by 20 percent, and the increase is at least $25,000, or such other amount as the Commission may order in a given proceeding or prescribe in a Procedure, prior cost estimates submitted by the petitioner to the Commission, the petitioner shall notify the Commission and parties of the new capital cost estimates for the project and the reasons for the increase. This requirement to monitor, update, and report shall continue until construction of the project has been completed.

Id. § 5.409 [hereinafter Rule 5.409]. Rule 5.409, the Commission concluded, "is directed at protecting ratepayers from escalations of project costs by expressly requiring utilities to monitor the estimated capital costs of projects and imposing a duty to report cost-estimate increases of more than 20%." The Commission noted that under Rule 5.409, when cost estimates increase, the company must provide an explanation. However, the Commission noted, "by its terms, Rule 5.409 does not require any additional review of reported cost increases," but rather, "presents an opportunity for the [Commission] and affected parties to consider whether any additional review is warranted and, if so, what type of review, whether pursuant to Rule 5.408, Rule 60, or any other type of review that appears appropriate under the circumstances." In "[r]eading Rules 5.408 and

4

5.409 together," the Commission explained, "an increased cost estimate by itself does not, as a matter of law, constitute a substantial change that requires a Rule 5.408 amendment review." The Commission concluded that "[a] cost increase without attendant physical changes does not alter the proposal itself because the [Commission] does not approve the estimated cost of a project in a Section 248 [CPG] proceeding." But a cost increase reported under Rule 5.409 could indicate a "substantial change" to the approved proposal requiring review under Rule 5.408 if the increase is due to a cognizable change to the project itself.

¶ 9. Applying this construction, the Commission held that, in this case, Rule 5.408 did not require a CPG amendment because the cost overruns and changes in energy markets do not represent "cognizable changes" to the Project's approved CPG proposal. The Commission emphasized that its narrow conclusion that review under 5.408 is not required on account of increased cost estimates did not signal that such cost overrides are irrelevant or immune from review. It explained that in instances where a cost estimate increases or market fluctuations raise doubt about the continued validity of its previous finding of public good in an issued CPG, Rule 5.409 provides the Commission an opportunity to review and decide whether to reopen the proceedings under Rule 60—as it did twice in docket 7970.

¶ 10. On appeal from the Commission's ruling, CLF makes several arguments. First, CLF contends that under the plain language of Rule 5.408, a significant increase in a project cost estimate is a change to the CPG "approved proposal." Cost estimates, CLF argues, are "a necessary and indispensable part of the proposal," and are essential to the Commission's review under the § 248 criteria. See 30 V.S.A. § 248(a)(3) (explaining that project must "promote general good of the State" in order for Commission to award CPG); id. § 248(b)(1)-(11) (providing criteria for CPG evaluation, such as "economic benefit to the State and its residents" and whether project "[i]s required to meet the need for present and future service that could not otherwise be provided in a more cost-effective manner through energy conservation programs and measures"). Under

5

CLF's theory of the case, to make findings under these criteria, the Commission necessarily evaluates cost as an essential component of the proposal; when costs significantly change, so too does the approved proposal. Accordingly, CLF argues that the cost increases in this case are a substantial change because they affect criteria under § 248(a) and (b). Moreover, CLF contends that the plain meaning of the word "change" in Rule 5.408 does not require a physical change. If the Commission wanted to narrow the meaning of "change" to "physical change," it could have used that express language in the Rule.

¶ 11. Second, CLF contends that by eliminating consideration of non-physical changes to the Project in Rule 5.408—such as cost estimate increases or changes in energy markets—the Commission disregarded statutory criteria in § 248 not addressed to the physical aspects of the proposal. Under the Commission's interpretation of Rule 5.408, CLF warns, projects that fail to satisfy all the § 248 criteria could move forward. For example, a proponent could submit unreasonably favorable or even false cost estimates to entice project approval. Upon Commission approval, the project would be insulated from further, careful review to ensure that it actually delivers on its rosy promises. Though CLF acknowledges that review might still be available under Rule 60, it denies that Rule 60 represents a "thorough review" because the complainant must shoulder the burden of proof and production in a Rule 60 proceeding.

¶ 12. Finally, CLF argues that the Commission's failure to require a CPG amendment infringed its procedural due process rights under the Fifth Amendment to the United States Constitution and Chapter I, Article 4 of the Vermont Constitution. In particular, CLF contends that its members have a property interest in the environment protected by Rule 5.408's mandate requiring the Project's continued compliance with § 248.

¶ 13. Rule 5.408 requires an amendment to a CPG "for a substantial change in the approved proposal," defined as "a change in the approved proposal that has the potential for

6

significant impact with respect to any of the criteria of Section 248(b) or on the general good of the state under Section 248(a)."

¶ 14. This case presents a narrow issue: do significant increases in the Project's estimated costs, coupled with evolution in energy markets, amount to a "substantial change" under Rule 5.408 requiring an amendment to the CPG? We conclude that on this record it does not. Our conclusion is based primarily upon the deference we owe to the Commission's reasonable interpretation of its own promulgated regulation in the face of two competing reasonable interpretations. The rulemaking history of Rule 5.408 lends further support to the Commission's interpretation. The availability of review through Rule 60(b) to address cost overruns—recourse that CLF has actively, albeit unsuccessfully, pursued—is critical to our analysis. Finally, we reject CLF's assertion that the Commission violated its procedural due process rights as CLF does not have a cognizable property interest in the generalized purpose of a § 248 CPG proceeding.

¶ 15. Our primary goal in interpreting an administrative rule is to discern the intent of the drafters, and we so do by examining the plain meaning of the regulatory language, with "other tools of construction . . . should the plain meaning rule prove unavailing." In re Williston Inn Grp., 2008 VT 47, ¶ 14, 183 Vt. 621, 949 A.2d 1073; see also In re Vitale, 151 Vt. 580, 584, 563 A.2d 613, 616 (1989) ("The primary rule when reviewing the construction of an administrative rule is to give the language its plain, ordinary meaning."). Out of respect for the expertise and informed judgement of agencies, and in recognition of this Court's proper role in the separation of powers, we accord agency decisions substantial deference. Williston Inn Grp., 2008 VT 47, ¶ 11. As long as an agency decision is "directed at proper regulatory objectives," it is presumed valid. In re Citizens Util. Co., 171 Vt. 447, 450, 769 A.2d 19, 23 (2000). This deference extends to an agency's—here, the Commission's—interpretation of its own promulgated regulation. See, e.g., In re Verburg, 159 Vt. 161, 165, 616 A.2d 237, 239 (1992) (explaining that "we employ a deferential standard of review for an agency's interpretations of its own regulations").

7

¶ 16. An agency does not have carte blanche in interpreting a regulation, however. See In re Wal-Mart Stores, Inc., 167 Vt. 75, 80, 702 A.2d 397, 400 (1997) ("Our deferential level of review . . . does not equate with mere judicial passivity in determining the propriety of Board 'interpretations' of its own rules." (quotation omitted)). We still conduct an independent review and will overturn an agency's interpretation of its own promulgated regulation that exceeds the authority granted under the state enabling statute, In re Stowe Cady Hill Solar, 2018 VT 3, ¶ 21, __ Vt. __, __ A.3d __ ; that conflicts with past agency interpretations of the same rule, id.; that results in "unjust, unreasonable or absurd consequences," Verburg, 159 Vt. at 165, 616 A.2d at 239 (quotation omitted); or that demonstrates "compelling indications of errors." Conservation Law Found. v. Burke, 162 Vt. 115, 121, 645 A.2d 495, 499 (1993).

¶ 17. The Commission's construction of the plain language of Rule 5.408 is reasonable and warrants our deference.[3] Id. at 122, 645 A.2d at 499. The Commission determined that the increased cost estimates did not amount to a change to the Project's approved CPG proposal because project expenses and the future status of energy markets were not a stated component of the approved CPG. The primary condition in VGS's CPG explained that "[c]onstruction, operation, and maintenance of the proposed Project shall be in accordance with the plans and evidence as submitted in this proceeding" and that "[a]ny material derivation from these plans or a substantial change to the Project must be approved by the [commission]." (Emphasis added.) The Commission's reading of the term "approved proposal" as requiring a change to the explicit parameters of the CPG approval, rather than underlying facts or assumptions that may have

---

[3] CLF does not argue that the Commission's interpretation of Rule 5.408 exceeds its authority under the enabling statute, or that it conflicts with past interpretations of the same rule. See Stowe Cady Hill Solar, 2018 VT 3, ¶ 21. Rather, CLF argues that the Commission erred in interpreting the rule's language. Accordingly, we review the Commission's construction for clear indications of error or for whether it would result in unjust or unreasonable consequences. See supra, ¶ 16.

induced the Commission's approval of the CPG, is reasonable. Changes to the actual project, as approved, may require alterations to a certificate of public good; otherwise, the project as constructed would not conform to the approval granted by the Commission. In contrast, changes to the assumptions underlying the Commission's determination may call into question the continuing validity of the Commission's analysis in awarding a CPG, but do not necessarily require changes in the CPG itself to conform the project as completed to the approval granted. CLF's alternate reading of Rule 5.408 that significant cost overruns impact the relevant considerations under § 248—and thus necessarily implicate what the Commission actually "approves" in a CPG proceeding—is logical as well. Faced with two reasonable interpretations of the plain language of Rule 5.408, our substantial deference to the Commission's reading of its own promulgated rule breaks the tie.[4]

¶ 18. Deference to the Commission is particularly appropriate in this context, given the specialized expertise involved in awarding CPGs for gas and electric facilities, see, e.g., In re VTel Wireless, Inc., 2015 VT 135, ¶ 10, 201 Vt. 1, 134 A.3d 1227 (noting "particular expertise and informed judgment" required to issue CPG (quotation omitted)), and the Commission's thorough adjudicative process. See 30 V.S.A. § 9 (establishing that the Commission "shall have the powers of a court of record in the determination and adjudication of all matters over which it is given jurisdiction" and "may render judgments, make orders and decrees, and enforce the same by any suitable process issuable by the courts in this State").

¶ 19. The regulatory history behind the promulgation of Rules 5.408 and 5.409 further supports the Commission's interpretation. The Commission proposed these rules shortly after its

_____

[4] We do not reach the Commission's holding that Rule 5.408 covers only physical changes to a project. It suffices for our purposes today that we defer to the Commission insofar as it held that Rule 5.408 pertains only to "approved proposals" and that, because the approved CPG in this case was not conditioned on the accuracy of the estimated costs or the ongoing state of energy markets, Rule 5.408 is not triggered.

2005 decision in <u>In re Vermont Electric Power Co.</u>, No. 6860, 2005 WL 2757324 (Vt. Pub. Serv. Bd. Sept. 23, 2005). In that case, the Commission responded to significant estimated cost increases for the construction of a transmission system upgrade—otherwise known as the Northwest Reliability Project—that had occurred after its approval of the CPG. In deciding whether to reopen the CPG proceeding, the Commission applied the Rule 60(b) test for reopening a final judgment rather than the "substantial change" test the Commission applied to determine when changes to a certificated project require an amended certificate. The Commission based this conclusion on the specific grant of remand from this Court, which allowed the Commission to examine whether to reopen the CPG proceedings in light of the estimated Project cost increases. <u>Id</u>. at *15. The Commission explained that a determination on whether to reopen the proceedings was consistent with the process required by Rule 60, rather than the "substantial change" test, which examines "when changes to a previously approved project are so material that the permittee must apply for an <u>amended</u> CPG." <u>Id</u>. "With a substantial change," the Commission explained, its "order approving the original project is not reopened—the original CPG remains valid for the project as approved—but instead the amended application is considered in a new proceeding." <u>Id</u>. Applying the Rule 60 framework, the Commission declined to reopen the Northwest Reliability Project's CPG proceedings. <u>Id</u>. at *21.

¶ 20.    Subsequently, and simultaneously, the Commission promulgated Rules 5.408 and 5.409. As noted above, Rule 5.408 requires an amendment to a CPG for a "substantial change to the approved proposal," while Rule 5.409 requires reporting of project cost overruns. Compare Rule 5.408 ("An amendment to a certificate of public good for construction of generation or transmission facilities, issued under 30 V.S.A. § 248, shall be required for a substantial change in the approved proposal."), with Rule 5.409 ("Where a Vermont utility is the petitioner, or the costs of a project or a portion thereof are eligible to be recovered from ratepayers, the petitioner shall

10

regularly monitor and update the estimated capital costs of any project it has proposed for or received approval under Section 248.").

¶ 21.    The Commission's initial draft rule created one rule requiring notice for "material changes" that may have the "potential to significantly impact the substantive [§ 248] criteria." Memorandum on Draft Rules for Sec. 248 from J. Whitney, Deputy Clerk of the Vt. Pub. Serv. Bd. to Service List 4 (Oct. 5, 2005).  The Vermont Department of Public Service submitted a comment and suggested two rules similar to the current versions of Rules 5.408 and 5.409 in order to "differentiate the treatment of cost increases in § 248 projects from changes in design or use of the projects."  Memorandum from A. Adler, Special Counsel to Vt. Dep't. of Pub. Serv. to S. Hudson, Clerk for Vt. Pub. Serv. Bd. 8 (Apr. 17, 2006).  The Department explained, "The concept is that a cost increase calls into question the original approval because evidence on which the approval was based is no longer correct, while a change in design or use of a construction project does not call into question the original approval, which would still be valid for the originally approved design or use." Id.

¶ 22.    The Commission accepted the Department's recommendation to separate its initial proposed rule into what are now Rules 5.408 and 5.409, and explicitly adopted the Department's recommendation that it "codify the [Commission's] precedent regarding when an amendment to an approved certificate of public good is required."  Vt. Pub. Serv. Bd. Response to Substantive Comments Received Regarding Rule 5.400.

¶ 23.    With respect to the costs of a project, the Commission accepted the Department's recommendation that it "include a provision requiring utility providers to regularly monitor and update costs of the project," incorporating into the rule a provision requiring that a petitioner (a) notify the Commission and parties if costs increase by 20 percent and (b) explain the cost increase. Id. The Commission noted that one commenter argued that Rule 5.409 should require an automatic reopening of the CPG proceedings when cost overruns exceed 20%.  Id.  Other

11

commentators "objected to this requirement and pointed out that there are sufficient remedies under the rules of civil procedure that provide the [Commission] sufficient flexibility to reopen the proceedings if required." Id. After considering these comments, the Commission expressly declined to incorporate the recommendation that the rule automatically provide for reopening of the proceedings if cost estimates increase by more than 20%. Id.

¶ 24. Although not dispositive, this rulemaking history lends support to the Commission's interpretation in several ways. First, nothing in the history suggests that the rules were intended to upend the law applied by the Commission in the Northwest Reliability Project case. If anything, this history suggests that the rules as promulgated were intended to codify existing Commission case law. Second, the Commission's position here is consistent with its adoption of the Department's recommendation while saying nothing in its responsive comments questioning the Department's distinction between "a cost increase [which] calls into question the original approval because evidence on which the approval was based is no longer correct," and "a change in design or use of a construction project [which] does not call into question the original approval, which would still be valid for the originally approved design or use." And finally, the fact that during this rulemaking process the Commission's discussion of cost overruns focused on when and whether to reopen proceedings, and referenced the rules of civil procedure rather than the rules for amending certificates, reinforces its current position that the rules contemplate that cost overruns will be addressed through a Rule 60 motion to reopen proceedings. The contemporaneous evidence of the Commission's response to various proposals concerning these rules, and its intent in enacting them, thus reinforces its current construction. See In re Dep't. of Bldgs. & Gen. Servs., 2003 VT 92, ¶ 14, 176 Vt. 41, 838 A.2d 78 (explaining that when examining legislative history "we must be cognizant of the quality of the evidence of legislative intent").

¶ 25. The availability of other remedies is critical to our holding. CLF had the opportunity to seek review of the CPG approval pursuant to Rule 60(b), and did so—two times. Pursuant to Rule 60(b), applicable in Commission proceedings by virtue of Commission Rule 2.221, the Commission can set aside a judgment—including a CPG—for a host of reasons including mistakes, newly discovered evidence, fraud, and any other reason justifying relief from judgment. Twice on remand in docket 7970, the Commission explored whether, pursuant to various subsections of Rule 60(b), it should reopen the CPG proceedings due to the estimated cost increases and evolution in energy markets. The Commission allowed for discovery and held evidentiary hearings concerning the changed costs, evolving market conditions, and their impact on the public good. In both proceedings, the Commission released extensive, well-articulated decisions concluding that if it reopened the CPG proceeding, it would not likely reach a different conclusion in applying the standards under § 248. The Commission conducted a lengthy analysis of the impact of the changes on the need for the project, the economic benefit of the project, and the general good of the state as a result of rate impacts. One significant factor in the Commission's analysis was VGS's agreement to limit the extent to which it would seek reimbursement for the excess costs through the ratemaking process. No party appealed the Commission's rulings on the 60(b) motions to this Court. In the absence of an alternate mechanism for reevaluating the project in light of the increased cost estimates, the Commission's construction of Rule 5.408 might raise significant concerns. But pursuant to Rule 60(b), a robust process is available for gauging the impact of unanticipated cost increases on the public good and accordingly reevaluating an approved CPG, and CLF could and did in fact participate in that process.

¶ 26. We acknowledge CLF's argument that a Rule 60(b) proceeding is less favorable to a party challenging an approved project than a CPG amendment proceeding. In a Rule 60(b) review, as CLF notes, "the party seeking to reopen has the burden of proof and must demonstrate that the [Commission] would likely reach a different conclusion." See LaFrance Architect v. Point

Five Dev. S. Burlington, LLC, 2013 VT 115, ¶ 20, 195 Vt. 543, 91 A.3d 364 ("It is incumbent upon a party seeking relief from a judgment not only to meet the requirements of [Rule] 60(b), but also to show, plead or present evidence of facts which, if established, would constitute a meritorious defense to the action." (alteration in original) (quotation omitted)). In contrast, in a Rule 5.408 proceeding, "the applicant must come forward with evidence to demonstrate that it is entitled to a new or amended CPG." See, e.g., Requirements for Petitions to Construct Elec. and Gas Facilities § 5.402, Code of Vt. Rules 30 000 5400, http://www.lexisnexis.com/hottopics/codeofvtrules (establishing filing requirements for CPG); In re Petition of Entergy Nuclear Vt. Yankee, LLC, No. 17-3276-PET, slip op. at 12 (Vt. Pub. Comm'n Aug. 31, 2017), http://vydecommissioning.com/wp-content/uploads/2016/09/puc-order-8-31-17.pdf [https://perma.cc/E5VG-H5FB] (ruling that company met criteria for amended CPG).

¶ 27. We are not fully persuaded by CLF's argument. On the one hand, CLF is correct that the difference in burdens of proof could make it more difficult for a party opposing an approved project to halt its progress through Rule 60(b) review than a Rule 5.408 proceeding when it becomes clear that the CPG was premised on inaccurate cost assumptions. The Commission's construction of its rules could conceivably shield a utility that purposely lowballs its cost projection. Even though the ensuing cost overruns might not be fully recoverable from ratepayers in each case, the result might nonetheless be the construction of infrastructure that is not necessarily in Vermont's best interest under § 248 criteria. On the other hand, the Commission could reasonably conclude that imposing a higher burden on a party challenging an approved CPG on the basis that the cost assumptions underlying the CPG approval have proven to be wrong is appropriate given the breadth of the "substantial change" test that CLF espouses and the need for finality. Given the enormous resources utilities invest in reliance on an approved CPG, and the fact that they may not recover all of the cost overruns through the ratemaking process, the Commission could reasonably conclude that a greater measure of finality is warranted where

14

changes to the assumptions underlying a project's approval do not necessarily require any change to the parameters of the approval itself.

¶ 28. Last, we reject CLF's contention that its due process rights under the Fifth Amendment to the United States Constitution and Chapter I, Article 4 of the Vermont Constitution were "infringed by [the Commission's] failure to require VGS to seek an amendment to its CPG." Assuming the agency decision is adjudicative rather than legislative—and the Commission's decision here was adjudicative—procedural due process comes into play when an individual has life, liberty, or property at stake in a proceeding. Parker v. Town of Milton, 169 Vt. 74, 80, 726 A.2d 477, 482 (1998). CLF impliedly acknowledges that it has no interest in life or liberty at stake; instead, it claims a property interest in environmental protection. Citing In re New Cingular Wireless PCS, LLC, 2012 VT 46, 192 Vt. 20, 54 A.3d 141, CLF argues that the CPG permitting scheme providing for review of environmental impacts is sufficient to create this property interest.

¶ 29. New Cingular Wireless PCS, LLC does not support CLF's constitutional claims. In that case, this Court considered a procedural due process challenge by neighbors to the proposed site of a telecommunications tower to the Commission's CPG award under 30 V.S.A. § 248a. Noting that the neighbors asserted a property interest "in connection with the award of a CPG for construction of telecommunications facilities on adjoining land" rather than a deprivation of their own physical property, New Cingular Wireless PCS, LLC, 2012 VT 46, ¶ 13, we explained that "the constitutional dimension of the rights of landowners with respect to permitting on adjoining properties depends upon the legal framework applicable to the permitting scheme in question." Id. ¶ 14. The CPG permitting scheme relating to the neighbors' complaints examined "a host of enumerated factors relating to aesthetics, historic sites, air and water purity, the natural environment, and the health and public safety" rather than an "analysis of the proposed project" that was "tied to the specific interests of the landowners." Id. ¶ 15. As in the "closely analogous" CPG proceedings under § 248, the Court noted, "proceedings pursuant to § 248a relate only to the

issue of public good, not the interests of private landowners who may or may not be involved." Id. (quotation omitted). Thus, as "the sole issue" in the CPG proceeding was whether it advanced the public interest, instead of the individual interests of property owners who may face condemnation proceedings stemming from the CPG, the neighbors were not entitled to "special recognition or consideration." Id.

¶ 30. Here, just as in New Cingular Wireless PCS, LLC, CLF does not claim an individual property interest and, as such, its due process claim fails. As noted above, a § 248 proceeding "relate[s] only to the issue of public good" as "the necessity of taking an individual's property or interest therein is not an issue." Vt. Elec. Power Co. v. Bandel, 135 Vt. 141, 145, 375 A.2d 975, 978 (1977) (quotation omitted). Because CLF frames its property interest as a generalized concern for environmental protection—and the public good that a § 248 proceeding attempts to further—it has no cognizable procedural due process right in this case. See Parker, 169 Vt. at 80, 726 A.2d at 482 (holding that plaintiffs' procedural due process claim failed because "plaintiffs did not have a cognizable property interest at stake in the public information meeting"). Accordingly, we need not address whether the Rule 60(b) proceedings were sufficient to satisfy any due process concerns.

Affirmed.

FOR THE COURT:

_____

Associate Justice

16