NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 57

No. 23-AP-400

| | |
|---|---|
| Daniel Pomerantz, Rebel East VT, LLC | Supreme Court |
| v. | On Appeal from<br>Cannabis Control Board |
| Cannabis Control Board | May Term, 2024 |

Mario Hankerson, Appellate Officer

Alfonso Villegas, Celeste E. Laramie, and David A. Boyd of Gravel & Shea PC, Burlington, for Plaintiff-Appellant.

Charity R. Clark, Attorney General, and Megan Campbell, Assistant Attorney General, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **WAPLES, J.** Applicant Daniel Pomerantz appeals the Cannabis Control Board's denial of his request to waive application and licensing fees for his proposed commercial cannabis cultivation establishment. Applicant asserted that he qualified as a "social equity applicant" because he had been incarcerated for a cannabis-related offense and came from a community that was historically disproportionately impacted by cannabis prohibition. The Board determined that he did not qualify as a social equity applicant under its rule and denied his request for a fee waiver. We affirm.

¶ 2. The Cannabis Control Board was created by the Legislature in 2020 to regulate legal access to cannabis in Vermont. 7 V.S.A. § 843; 2019, No. 164 (Adj. Sess.), § 2. The Board issues licenses to cannabis cultivators, wholesalers, retailers, manufacturers, and testing

laboratories to engage in commercial cannabis activity. 7 V.S.A § 843(b) (setting forth duties of Board, which include administration of licensing program for "cannabis establishments"); id. § 861(8) (defining cannabis establishments). Under the current licensing system, outdoor cultivators are categorized into different tiers ranging from Tier 1, which includes cultivators with up to 1000 square feet of plant canopy or fewer than 125 cannabis plants, to Tier 5, which includes cultivators with up to 20,000 square feet of plant canopy. 7 V.S.A. § 910(1)(A).[1] The Legislature has established annual licensing fees to be paid by cultivators, which range from $750 per year for Tier 1 cultivators to $18,000 per year for Tier 5 cultivators. Id. In addition, every applicant for a cannabis establishment license must pay an initial one-time application fee of $1000. Id. § 910(11)(A).

¶ 3. Applicants who qualify as "social equity applicants" may be entitled to a reduction in fees. See 7 V.S.A. § 911 (empowering Board to reduce or waive application and licensing fees for social equity applicants); Cannabis Control Bd. Rules, Rule 1.2.2, Code of Vt. Rules 25 000 001 [hereinafter CCB Rules], https://ccb.vermont.gov/sites/ccb/files/2023-10/CCBRule1-Licensing.pdf [https://perma.cc/3BCQ-YU46] (requiring applicants to pay fees in accordance with current schedule, which includes waivers and reductions for social equity applicants). The Board will waive the application and license fees for the first year that a qualified social equity applicant is licensed. The applicant will be required to pay 25% of the license fee in their second year, 50% in their third year, 75% in their fourth year, and the full license fee in subsequent years. Cannabis Control Bd., Guidance on Application and Licensing Fees at 6 (April 2024), https://ccb.vermont.gov/sites/ccb/files/2024-04/Fee.Schedule.Guidance_FINAL_4.17.24.pdf [https://perma.cc/SK7K-TD2K]. Social equity applicants are also eligible for low-interest loans and other assistance from the Cannabis Business Development Fund. 7 V.S.A. § 987(c).

---

[1] The statute authorizes a sixth tier, which is to be assessed an annual licensing fee of $34,000 per year; however, the Board apparently has not opened that tier.

¶ 4.     Under the Board's rules, social equity applicants can be either individuals or businesses.  CCB Rule 1.1.3(m).  Applicant claims to qualify as a social equity individual applicant.  At the time he applied, CCB Rule 1.1.3 defined a social equity individual applicant to mean an individual who is a Vermont resident and is "a socially disadvantaged individual" or has "been incarcerated for a cannabis-related offense."[2]  As relevant here, "socially disadvantaged individuals" meant persons who "are (1) from a community that has historically been disproportionately impacted by cannabis prohibition and (2) able to demonstrate to the Board that they were personally harmed by the disproportionate impact."  The rule stated that "[i]n assessing this personal harm, the Board may consider factors such as educational impacts, lost employment opportunities, or housing insecurity."[3]

¶ 5.     Applicant is the sole member of Rebel East, LLC.  In early 2022, applicant applied on behalf of Rebel East for a Tier 5 cultivation license, the largest available.  Applicant initially asserted that he qualified as a social equity individual applicant because he had been incarcerated for a cannabis-related offense.  He provided documentation that in 2012, he was charged by the State of Nevada with one count of conspiracy to violate the Nevada Uniform Controlled Substances Act, a felony, and was held for one day in county jail before being released on bail.

¶ 6.     The Board considered applicant's request for social equity status at its June 22, 2022 meeting.  The Board concluded that applicant was not eligible for social equity status due to his Nevada conviction because he was not sentenced to a term in prison as the penalty for a cannabis-related offense.  Instead, his sentencing was deferred and his case was eventually

---

[2]  A person could also qualify as a social equity individual applicant if a family member was incarcerated for a cannabis-related offense.  This provision is not relevant here.

[3]  Rule 1.1.3 was subsequently amended to define a social equity individual applicant to mean a person who has "been incarcerated in a jail or prison facility subsequent to sentencing for a cannabis-related offense" and to clarify the meaning of "community."  See CCB Rule 1.1.3(n)(ii); CCB Rule 1.1.3(p)(ii).  The parties agree that the prior version of the rule applies to applicant's application.

dismissed after he successfully completed a required term of supervision. The Board explained that it did not consider pretrial detention to be incarceration for a cannabis-related offense.

¶ 7. After receiving the Board's decision, applicant responded that he believed he alternatively qualified for social equity status as a socially disadvantaged individual because he lived in Humboldt County, California from 2010 to 2019, which he alleged is an area that was disproportionately affected by cannabis prohibition. He argued that he had suffered from helicopters flying low over him, neighbors being raided at gunpoint and arrested, intimidation by law enforcement on local roads, and housing shortages and inflated housing prices due to the illicit cannabis market. The Board permitted applicant to amend his application to pursue this theory. He provided multiple written statements and was interviewed twice by Board staff.

¶ 8. On July 15, 2022, the Board denied applicant's request for social equity status. It explained that applicant's time living in Humboldt County did not automatically qualify him as being part of a historically impacted community under CCB Rule 1.1.3 because residing in a specific geographic area was not, by itself, indicative of negative impacts on individual outcomes. It further found that applicant did not sufficiently demonstrate that he suffered personal harm from living in Humboldt County, noting that he did not claim to have been raided or arrested or to have been the victim of violent crime. It acknowledged applicant's statements that his friends and neighbors experienced such incidents and that his family suffered several "near break-ins." However, it found that despite such challenges, applicant was able to relocate between the east and west coasts several times, to acquire properties in California and Vermont, and to start and run his own cannabis business. It concluded that the totality of the circumstances did not demonstrate the type of long-term personal harm that the fee waiver program was meant to redress.

¶ 9. Applicant appealed to an appellate officer. After a hearing at which the parties presented oral arguments, the appellate officer issued a written decision affirming the Board's denial of applicant's request for social equity status. This appeal followed.

4

¶ 10. Applicant argues that the appellate officer erred in declining to consider the issues raised in applicant's statement of questions and applied the wrong version of the CCB Rules to his appeal. He contends that the Board's interpretation of the term "incarcerated" is arbitrary and that his day in jail qualifies him as a person who was incarcerated for a cannabis-related offense. He further argues that the Board erred in concluding that he was not from a community that was historically disproportionately impacted by cannabis prohibition.

¶ 11. We need not address applicant's arguments concerning the appellate officer because in this type of appeal, we are tasked with conducting an independent review of the Board's decision and are not required to give any deference to the appellate officer's conclusions. "Where there is an intermediate level of appeal from an administrative body, we review the case under the same standard as applied in the intermediate appeal." Tarrant v. Dep't of Taxes, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999). Here, that means that we "review the matter on the basis of the records created before the Board" and are precluded from "substitut[ing] [our] judgment for that of the Board as to the weight of the evidence on questions of fact." 7 V.S.A. § 847(b)-(c). We may reverse and remand only if we determine that

> substantial rights of the appellant have been prejudiced because the Board's finding, inferences, conclusions, or decisions are:
>
> (1) in violation of constitutional or statutory provisions;
>
> (2) in excess of the statutory authority of the Board;
>
> (3) made upon unlawful procedure;
>
> (4) affected by other error of law;
>
> (5) clearly erroneous in view of the evidence on the record as a whole;
>
> (6) arbitrary or capricious; or
>
> (7) characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Id. § 847(b). Because the appellate officer "did not take evidence but functioned solely as an appellate body in this context," we independently review the Board's decision without giving deference to the appellate officer's conclusions. In re Town of Sherburne, 154 Vt. 596, 603, 581 A.2d 274, 278 (1990); see In re Bombardier, 2018 VT 11, ¶ 15, 206 Vt. 450, 182 A.3d 1165 (reviewing decision of appellate officer affirming Board of Professional Engineering decision using same standard as appellate officer).

¶ 12.    We therefore turn to the primary issue on appeal, that is, whether the Board erred in concluding that applicant did not qualify as a social equity individual applicant. As noted above, applicant first argued that he was eligible for social equity status due to his pretrial detention in Nevada. The Board determined that he was not "incarcerated" within the meaning of CCB Rule 1.1.3 because he did not serve a prison sentence imposed as penalty for a cannabis conviction. Applicant claims that the Board's interpretation of the term "incarcerated" is arbitrary and contrary to its plain meaning, which applicant argues is "any period of confinement."

¶ 13.    Our primary goal in construing a regulation is to determine the intent of the administrative agency. In re Verburg, 159 Vt. 161, 164, 616 A.2d 237, 239 (1992). An agency's interpretation of its own regulation is presumed to be valid. Id. at 165, 616 A.2d at 239. However, we will not uphold an agency's interpretation that exceeds the agency's statutory authority, conflicts with the agency's prior interpretations of the same rule, "results in unjust, unreasonable or absurd consequences," or "demonstrates compelling indications of error." In re Conservation L. Found., 2018 VT 42, ¶ 16, 207 Vt. 309, 188 A.3d 667 (quotations omitted).

¶ 14.    At the time relevant here, CCB Rule 1.1.3(o) defined a social equity individual applicant to mean a person who has "been incarcerated for a cannabis-related offense." While this language could arguably apply to any period of confinement connected to a cannabis-related crime, the Board has interpreted its rule more narrowly to require proof that the person was sentenced to a term in prison as the penalty for a cannabis-related conviction. The Board's interpretation is

6

consistent with the policy behind the social-equity program, which is to prioritize licensing and provide additional business development resources for individuals from socioeconomic groups that have experienced the most negative and lasting impacts of cannabis criminalization.[4] 7 V.S.A. § 911; see also id. § 903(a)(2) (requiring Board to consider certain criteria when issuing licenses including "whether the applicants would foster social justice and equity in the cannabis industry by being a minority or women-owned business"). As a practical matter, it also simplifies the Board's verification process, because a judicially imposed sentence for a cannabis-related offense can be proven in most cases with readily available formal documentation. The Board's interpretation of the term "incarcerated" does not attempt to usurp authority not provided to the Board or conflict with the Board's prior interpretations of the rule, and it is not clearly unreasonable or erroneous. We accordingly decline to disturb it. See Conservation L. Found., 2018 VT 42, ¶ 17 (explaining that where agency rule could be reasonable interpreted more than one way, "our substantial deference to the [agency's] reading of its own promulgated rule breaks the tie").

¶ 15. We acknowledge that this Court has used the term "incarceration" to mean pretrial detention in other situations. See, e.g., State v. Blackmer, 160 Vt. 451, 458, 631 A.2d 1134, 1139 (1993) (explaining "in cases where the constitutional right [to bail] does not apply, the presumption is switched so that the norm is incarceration and not release"). However, those cases involve individual challenges to pretrial detention imposed by the trial court in criminal matters; they have no bearing on licensing requirements for cannabis farms. We therefore do not view them as requiring an identical meaning for the term as it appears in the Board's rule. In fact, we have

---

[4] As explained in a cannabis-law treatise, "individuals with cannabis arrests and or convictions have no doubt been impacted by cannabis enforcement. However, allowing anyone with a cannabis arrest or conviction to participate may not adequately account for privileges associated with race or wealth. Participation based on prior cannabis arrests or convictions alone could result in an overly broad categorization, allowing for the unintended inclusion of individuals from communities that were not disproportionately impacted by the War on Drugs." C. Packer, Cannabis Law Deskbook § 7:9 (2023-2024 ed.).

specifically recognized that the term "incarcerated" may have different meanings in different settings. See State v. Gauthier, 2020 VT 66, ¶ 17, 213 Vt. 82, 238 A.3d 675 (explaining that "the meaning of 'incarcerated' in the context of the Sex Offender Registration Act is not necessarily the same as in Title 28" because former deals with where offender lives and latter focuses on legal status of offender); see also State v. Powers, 2016 VT 110, ¶ 16, 203 Vt. 388, 157 A.3d 39 (noting that "the term 'in custody' has different meanings in different contexts").[5]

¶ 16.    Here, it is undisputed that applicant was not sentenced to a term in prison for a cannabis-related offense. At the time of his arrest, he was detained for one day before posting bail. He later pled guilty to a drug conspiracy charge and the court ordered his sentencing to be deferred for one-to-three years, subject to conditions requiring him to attend a treatment program and attend diversion court. The court ordered that he would receive one day of credit for the day he spent in jail toward his term of probation on the deferred sentence. In 2013, he successfully completed probation, his case was dismissed without sentencing, and his conviction was set aside. Based on these facts, it was not improper for the Board to determine that applicant was ineligible for social equity individual applicant status due to past incarceration.

¶ 17.    We turn to the other basis asserted by applicant for eligibility: his ten-year residency in Humboldt County, California. As noted above, under the rule in effect when applicant filed his application, a person could qualify for social equity status if they were "(1) from a community that has historically been disproportionately impacted by cannabis prohibition and (2) able to demonstrate to the Board that they were personally harmed by the disproportionate impact." Applicant argues that the Board improperly denied him social equity status for not being "from"

---

[5]    Appellant argues that in Gauthier, we adopted the common dictionary definition of incarceration, which is "confinement in a prison," when construing the term as it appeared in a statute. 2020 VT 66, ¶ 8. Gauthier is distinguishable because we are not here conducting a de novo interpretation of a statute, but rather examining whether the agency's interpretation of its own rule is clearly erroneous or unreasonable.

California and that this violated his constitutional right to travel as well as the dormant Commerce Clause of the U.S. Constitution.[6]

¶ 18.   The premise of applicant's argument is not supported by the record. In its July 15, 2022 decision, the Board accepted that applicant was "from" Humboldt County in the sense that he had been domiciled there. However, it concluded that living in a particular geographic location for a period of time did not necessarily make him part of a community that had historically been disproportionately impacted by cannabis prohibition. As with the term "incarcerated," the Board appears to have interpreted the term "community" to mean a group of people who share a common characteristic, rather than simply a geographic area. See Community, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/community [https://perma.cc/ZQ4S-AGF8] (defining community to mean "a unified body of individuals," such as "the people with common interests living in a particular area" or "a group of people with a common characteristic or interest living together within a larger society"). Applicant does not directly challenge the Board's interpretation of this term, which is reasonable in light of the policy goals discussed above.

¶ 19.   Even assuming that applicant was from a disproportionately harmed community, however, his claim fails because the Board concluded that he did not demonstrate that he was personally harmed by the disproportionate impact. CCB Rule 1.1.3 provided that "[i]n assessing this personal harm, the Board may consider factors such as educational impacts, lost employment opportunities, or housing insecurity." The Board considered the evidence presented by applicant and determined that applicant failed to demonstrate continuing disadvantages caused by his time living in Humboldt County. It acknowledged the stress and anxiety applicant experienced due to

---

[6] Applicant argues that in ruling that he was not "from" California, the Board improperly relied on a version of CCB Rule 1.1.3 that had been proposed but not promulgated. He points to statements made by Board counsel in a memorandum dated March 2023, months after the Board rejected his application. The Board did not incorporate or cite to these statements in its July 2022 decision, which is the relevant decision on appeal. We therefore see no evidence that the Board applied the wrong version of the rule.

fear of crime and law enforcement activities and high housing prices. However, it concluded that applicant had enjoyed significant personal and professional advancement while living in California, ultimately acquiring multiple properties there and in Vermont and starting a successful cannabis business. These findings are supported by the record and in turn support the Board's conclusion that applicant did not qualify for social equity status as a socially disadvantaged individual. We therefore see no reason to disturb its decision. See Vt State Colls. Fac. Fed'n v. Vt. State Colls., 151 Vt. 457, 460, 561 A.2d 417, 419-20 (1989) ("[D]ecisions made within the expertise of an administrative agency are presumed to be correct, valid and reasonable, and we will normally defer to its determinations." (citation omitted)); 7 V.S.A. § 847(b) (prohibiting appellate court from reweighing evidence on appeal).

Affirmed.

FOR THE COURT:

_____

Associate Justice